STATE OF MARYLAND *v.* REGINALD ROGERS ET AL.

[No. 182, September Term, 1978.]

\* \* \*

STATE OF MARYLAND *v.* AARON B. COPLEY ET AL.

[No. 378, September Term, 1978.]

\* \* \*

STATE OF MARYLAND *v.* ROBERT McGEE

[No. 426, September Term, 1978.]

*Decided November 3, 1978.*

574

The cause was argued before GILBERT, C. J., and THOMPSON and DAVIDSON, JJ.

*F. Ford Loker, Assistant Attorney General,* with whom were *Francis Bill Burch, Attorney General, Warren B. Duckett, Jr., State's Attorney for Anne Arundel County,* and *R. David Fordham, Assistant State's Attorney for Anne Arundel County,* on the brief, for appellant.

*George E. Burns, Jr., Assistant Public Defender,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellees.

GILBERT, C. J., delivered the opinion of the Court.

The appellees in these consolidated appeals escaped from lawful confinement in the Maryland House of Correction at Jessup, Anne Arundel County, Maryland. Each of the appellees was subsequently apprehended, returned to the custody of the Division of Correction, and indicted for the statutory offense of escape. Md. Ann. Code art. 27, § 139 (a). They continued their "struggle to escape" [1] by attacking the escape statute on the ground that it denied equal protection of the law to persons who escaped from any penal institution except those at Hagerstown, Maryland. Two judges of the Circuit Court for Anne Arundel County agreed with the appellees that the statute was unconstitutional and dismissed the indictments. The State, as it is permitted to do when an indictment is dismissed,[2] appealed to this Court. On motion,

---

1. John Keats (1795-1821), *Ode to a Grecian Urn.* St. 1.
2. Md. Cts. & Jud. Proc. Code Ann. § 12-302 (c) (1).

we consolidated all the cases for the purpose of oral argument.

## Appeal No. 182

Pursuant to then Md. Ann. Code art. 27, § 139 (a), Reginald Rogers, Matthew E. Walinski, Larry Woodhouse, Richard C. Harris, Preston Rich, Wilford Stovall, Brett Taylor, Neil H. Branch, Alvin Scott, and Vernon Hawkins were indicted by the Grand Jury for Anne Arundel County for the crime of escape. Each of the indictees filed a motion to dismiss on the ground that the statute under which they were charged was unconstitutional. The statute provided in pertinent part:

> "(a) If any offender or person legally detained and confined in the penitentiary or jail, or house of correction, or reformatory, or station house, or any other place of confinement, in this State, escapes he shall be guilty of a felony and on conviction by the Criminal Court of Baltimore City or by the circuit court of the county in which the escape takes place, be sentenced to confinement in the penitentiary, jail or house of correction for whatever additional period, not exceeding ten years, as the court may adjudge. The sentence so imposed shall be consecutive to the sentence under which the inmate was originally confined and may not be suspended. However, for escapes from ´ the Maryland Correctional Institution — Hagerstown or the Maryland Correctional Training Center — Hagerstown or any juvenile institution which have not involved an assault, the sentence may not exceed confinement for three years." [3]

The movants directed their attack to the fact that section 139 (a) prescribed different penalties for escape depending upon the institution from which the escape was made. Anyone who unlawfully fled confinement in "the Maryland

---

3. A brief and interesting history of the Maryland law of escape may be found in an opinion by Judge Charles E. Orth, Jr., in Fabian v. State, 3 Md. App. 270, 274-79, 239 A. 2d 100, 104-06 (1968).

Correctional Institution — Hagerstown [(MCIH)] or the Maryland Correctional Training Center — Hagerstown [(MCTCH)] or any juvenile institution" when the flight involved no assault, was subjected to confinement for a period of time not exceeding three (3) years. All escapees from "any other place of confinement in this State," were subject to a sentence of not more than ten (10) years. The movants vigorously contended that there was no rational basis for the distinction between MCIH, MCTCH, and the other institutions, and that because of the distinction without a difference, they were denied the equal protection of the laws in violation of the Fourteenth Amendment of the Constitution of the United States and of Article 23 of the Maryland Declaration of Rights.

The motion was rejected by Judge E. Mackall Childs of the Circuit Court for Anne Arundel County because, as in *Carter v. State,* 38 Md. App. 400, 381 A. 2d 309 (1978), the movants "failed to offer any evidence regarding types of inmates or training other than to state that the Hagerstown facility is described in the 1973-1974 *Maryland Manual* as a 'medium security institution' as is the House of Correction at Jessup [from which the movants had made their unlawful departure]...." Judge Childs was of the view that a single statement in the *Maryland Manual* in which the "Hagerstown facility" and the House of Correction were both characterized as "medium security institutions" was not sufficient to demonstrate that there was no rational basis for the legislative classification.

Subsequently, the movants sought and obtained a new hearing from another judge of the Circuit Court for Anne Arundel County. The movants introduced testimony from Howard Lyles, Assistant Commissioner of Operations, Maryland Division of Correction. Mr. Lyles told the court that the MCIH was originally "called the Penal Farm because it actually was a large tract of land and they did raise many crops.... It was then later ...renamed ... the Reformatory for Males. Then later, it was renamed and called the Maryland Correctional Institution for Men, and ... is now called the ... [MCIH]." It was primarily built and "designed for young

offenders that were just above the juvenile age...." It became a correctional institution "in the early '60's.'" Mr. Lyles said that MCIH is "still at this date not a full part of the adult system" although the Department of Correction is "placing adults into that facility . . . [because of] the fact there is not space in the — you know, adult facilities...." Lyles further stated that "twenty-five per cent of . . . [the inmates] are there because of lack of space." Those inmates are not segregated in any manner but are part of the general institutional population. If space in other institutions were available, "we would revert back to having predominately, in all possibility, all of the Hagerstown complex being for young offenders." There was not one word of testimony that any of the "adults" were more than 25 years of age.

The hearing judge felt that "the original legislative purpose for distinguishing between the inmates housed at Hagerstown and those in other facilities . . . no longer exists...." He opined that there is no "proper or reasonable ground" for treating escapees from MCIH or MCTCH differently than escapees from other penal institutions, and that Md. Ann. Code art. 27, § 139 (a) was unconstitutional as violative of "the Equal Protection Clause" as well as "the Maryland Declaration of Rights." [4]

---

4. Patently, in response to the decision by the Circuit Court for Anne Arundel County, the Legislature, by Laws 1978, ch. 188, enacted as an "emergency measure" a replacement for the act struck down by the circuit court. Laws 1978, ch. 188, now codified as Md. Ann. Code art. 27, § 139 (a) provides:

"(a) If any offender or person legally detained and confined in the penitentiary or jail, or house of correction, or reformatory, or station house, or any other place of confinement, in this State, escapes he shall be guilty of a felony and on conviction by the Criminal Court of Baltimore City or by the circuit court of the county in which the escape takes place, be sentenced to confinement in the penitentiary, jail or house of correction for whatever additional period, not exceeding ten years, as the court may adjudge. The sentence so imposed shall be consecutive to the sentence under which the inmate was originally confined and may not be suspended. However, for escapes from juvenile institutions which have not involved an assault, the sentence may not exceed confinement for three years."

Chapter 188 became effective immediately upon being signed into law by the Acting Governor on May 2, 1978.

578

*Appeal No. 378*

Approximately one month after disposition in the *Rogers, et al.,* case, the same hearing judge, on motion, dismissed escape charges against Aaron B. Copley, Gary Wayne Jefferies, Thomas Lightfoot, Michael Johnson, Claudie West, Victor Marzullo, James E. Barnes, Edward R. Henry, Clarence Eugene Ross, Larry Williams, Earl Scott, and Marvin Franklin. The dismissals were granted for the identical reasons that *Rogers, et al.* was dismissed.

*Appeal No. 426*

Robert McGee was also indicted by the Grand Jury of Anne Arundel County on the charge of escape. McGee moved to dismiss the indictment because of what he perceived to be a constitutional defect. The trial judge did not see it that way and denied the motion. McGee was convicted and sentenced to nine (9) months incarceration, to be served consecutively to the term he was serving when he escaped. After the decision in *Rogers, et al.* McGee filed a motion for reconsideration and rehearing. The trial judge that had presided at McGee's trial granted the motion, reconsidered, and on the basis of the *Rogers* decision, dismissed the indictment.

*The Merits of the Appeal*

Obviously alarmed by what it perceives to be an erroneous abolition of the escape statute, the State seeks reversal. Here the State asserts:

"THE LOWER COURT ERRED IN DECLARING MD. ANN. CODE ARTICLE 27, § 139 (a), UNCONSTITUTIONAL BECAUSE THE STATE LEGISLATURE HAD A RATIONAL BASIS FOR ENACTING DIFFERING PENALTIES DEPENDING UPON THE NATURE OF THE CORRECTIONAL INSTITUTION FROM WHICH THE ESCAPE WAS EFFECTED."

It is well settled that equal protection attacks will not be successful if, as in the matter now before us, the legislative

classification rests upon any rational basis rather than feigned differences. *Administrator, Motor Veh. Adm. v. Vogt,* 267 Md. 660, 677, 299 A. 2d 1, 10 (1973); *Potomac Sand & Gravel v. Governor,* 266 Md. 358, 376, 293 A. 2d 241 (1972); *Allied American Co. v. Commissioner,* 219 Md. 607, 623, 150 A. 2d 421 (1959). *See also Schilb v. Kuebel,* 404 U. S. 357, 92 S. Ct. 479, 30 L.Ed.2d 502 (1971); *Dandridge v. Williams,* 397 U. S. 471,. 90 S. Ct. 1153, 25 L.Ed.2d 491 (1970); *McDonald v. Board of Election Comm'rs,* 394 U. S. 802, 89 S. Ct. 1404, 22 L.Ed.2d 739 (1969). We agree with the State that the Legislature did, indeed, have a rational basis for the distinction that it drew between escapes from MCIH or MCTCH and other penal institutions.

As created, MCIH and MCTCH were visualized as housing youthful offenders who were above the age of juveniles but still within the classification of "youthful." Md. Ann. Code art. 27, § 689, enacted by the Legislature in 1962,[5] specifies the age limits of those confined in Hagerstown to between 16 and 25.[6] In 1963, one year after section 689 so classified the Hagerstown facilities, the Legislature provided a less severe penalty for escapes from Hagerstown than from other places of confinement by adding an exception to the existing

---

5. *See* Laws of Md. 1962, ch. 123, § 1.

6. Section 689 (d) also provides:

"In those cases in which the judge of the Supreme Bench of Baltimore City, who is assigned to exercise jurisdiction in juvenile causes, may waive jurisdiction and order a minor under the age of sixteen, and the judge of any circuit court in any county exercising jurisdiction in juvenile causes, may waive jurisdiction and order a minor under the age of eighteen, to be held for action under the regular procedure that would follow if such act or acts had been committed by an adult, then and in that event the judge presiding in the criminal courts of Baltimore City and the judge of the circuit court of any county upon assuming jurisdiction in such case and upon conviction may commit the minor to the Maryland Correctional Institution — Hagerstown regardless of age. The courts of this State, instead of imposing sentences of fixed duration upon male offenders included within this subsection may sentence them to the Maryland Correctional Institution — Hagerstown for an indeterminate period of time which may not exceed the maximum term of imprisonment provided by statute for the offenses of which said person was convicted; and in the event no penalty is prescribed by statute for said offenses then the court shall prescribe the maximum term of imprisonment; but nothing in this sentence applies to any case in which the sentence is life imprisonment or to the service of time for nonpayment of a fine."

language of section 139 (a).[7] Apparently the General Assembly believed that those youths who would be confined to MCIH or MCTCH would be neither hardened criminals nor dangerous offenders. To protect its Hagerstown officers, however, the Legislature carefully limited the lesser penalty to those escapes not involving assault upon the officers. If an individual, in escaping from a Hagerstown detention facility, committed an assault upon a prison officer in the course of the escape, the three-year maximum penalty would not be applicable, and the offender could be sentenced up to ten (10) years imprisonment, consecutive to the sentence the offender was serving at the time of the escape.

Md. Ann. Code art. 27, § 139 (a) should not be read in a vacuum but must be considered along with Md. Ann. Code art. 27, § 689. The latter section articulates the legislative purpose for the use of MCIH and MCTCH. "[W]e cannot escape history," [8] and when the history of the use of the two Hagerstown institutions, including the legislative purpose for them, is weighed along with section 139 (a), it is clear that the statutory scheme for the difference in the degree of punishment for escape from MCIH or MCTCH as compared with escape from other penal institutions serves a rational purpose and is not subject to successful constitutional challenge merely because of that disparity. *Johnson v. Louisiana,* 406 U. S. 356, 92 S. Ct. 1620, 32 L.Ed.2d 152 (1972); *Gibson v. State,* 17 Md. App. 246, 300 A. 2d 692 (1973). *See also Administrator, Motor Veh. Adm. v. Vogt, supra; Potomac Sand and Gravel v. Governor, supra; Allied American Co. v. Commissioner, supra.* Paraphrasing what we said in *Gibson,* there is nothing invidious in the Maryland distinction between

---

7. *See* Laws of Maryland 1963, ch. 157. The Legislature inserted the following new language:

"However, for escapes from the Reformatory for Males which have not involved an assault, the sentence shall not exceed confinement for three years."

In 1967, section 139 (a) was updated by renaming the Reformatory for Males to MCIH and MCTCH. Laws of Maryland 1967, ch. 67.

8. Abraham Lincoln (1809-1865). *Annual Message to Congress,* December 1, 1862.

escapes from MCIH or MCTCH and other Maryland penal institutions. That this State chooses to treat its youthful, less-serious offenders who escape from Hagerstown in a manner that varies from the treatment afforded offenders who escape from other places of confinement does not violate the constitutional rights of the latter. *Gibson v. State,* 17 Md. App. at 257.

On the surface, then, we observe no constitutional defect in what was Md. Ann. Code art. 27, § 139 (a).

The difficulty, if any, with former Md. Ann. Code art. 27, § 139 (a) is not with the statute *per se,* but rather with the Department of Correction's housing within the Hagerstown facility those persons who possibly do not fit within the category of youthful offenders. We recognize that the Department is under an order of the United States District Court for the District of Maryland to provide additional living space for prisoners, but that the physical facilities available make compliance difficult. Whether the federal court order led to the housing of adult offenders in MCIH or MCTCH is not revealed by the records.

The fatal omission in the records before us, however, is not occasioned by the absence of the reason for confining adult offenders in Hagerstown, but by what is meant by the Department of Correction's assertion, speaking through Mr. Lyles, that twenty-five (25) percent of the total population are "adults." The word "adult" is not defined in the record, although it is defined in Md. Ann. Code art. 1, § 24, to mean that "[e]xcept as otherwise specifically provided by statute, a person eighteen years of age or more is an adult for all purposes whatsoever. . . ." We are unable to ascertain from Mr. Lyles's testimony as quoted above if he used the statutory definition of an adult, or he applied some other meaning. The record does not indicate whether all or any of those persons whom Lyles characterizes as "adults" are over age 25. Lyles's testimony gives rise to more than one inference. By the use of the words "twenty-five per cent adult," he may have meant persons beyond the outer limit of section 689, *i.e.,* older than 25 years, but other inferences are permissible. It may be that he meant that seventy-five (75)

percent were between the ages of 16 and 18. In short, the mere use of the word "adult," without defining it, makes the testimony vague and of dubious value.

The appellees further claim that the specter of a denial of the equal protection of the law is raised by the possibility that an "adult" inmate who escapes from Hagerstown, *sans* assault, would be subject to a maximum penalty of three (3) years while his counterpart who escapes from any other place of confinement would be subject to commitment for a period of ten (10) years.

It is the *possibility* that the appellees, in appeals No. 182 and No. 378, *might* be "sentenced to a term greater than the maximum allowable for an escape from the Hagerstown facilities," *Carter v. State,* 38 Md. App. 400, 403, 381 A. 2d 309, 311 (1978), that caused the circuit court to declare the act unconstitutional notwithstanding the fact that the appellees have "suffered no actual injury. In other words ... [they have] not shown that ... [they were] *in fact* treated differently from any individuals," *id.* at 403, 381 A. 2d at 312, who escaped from Hagerstown. It may be that had the appellees in appeals Nos. 183 and 378 been tried, they might have been found not guilty, or if adjudged to be guilty, they might have received a sentence equal to or less than the maximum that could be imposed for escape from Hagerstown's facilities. The happening of either of those two contingent events would eradicate the possibility of a successful equal protection attack, for the simple reason that there would be no denial of equal protection.

Put another way, the appellees have placed the proverbial cart before the horse and are relying upon "theoretical inequalities" without having shown that they, themselves, are affected unfavorably by the discrimination of which they complain. *Roberts & Schaefer Co. v. Emmerson,* 271 U. S. 50, 54-55, 46 S. Ct. 375, 70 L. Ed. 827 (1926); *Carter v. State,* 38 Md. App. at 403-04, 381 A. 2d at 311-12. The hearing judges should have denied the motion to dismiss so that the cases could have proceeded to an adjudication. If the appellees, or any of them had been subjected to a penalty in excess of the maximum permitted for escape from Hagerstown, they would

have been in a position to level a constitutional barrage on the judgment. On the other hand, had the sentence fallen within the range of that permitted for the offense of escape from Hagerstown, the equal protection argument would have vaporized and disappeared. *Carter v. State, supra.*

Even if we were to decide that former Md. Ann. Code art. 27, § 139 (a) was, in fact and in law, a denial of the equal protection guaranteed by the Fourteenth Amendment and by Article 23 of the Maryland Declaration of Rights, it is transpicuous that the unconstitutional feature comes into being *if and only if* the trial court imposes a sentence in excess of three (3) years. Otherwise, the party to whom the sentence is meted has no cause to complain that he or she is being denied equal protection of the law. *Carter v. State, supra.*[9]

For the reasons herein stated, we reverse the order of the Circuit Court for Anne Arundel County in which it dismissed the indictments in appeals Nos. 182 and 387 and remand the cases for trial.

With respect to appeal No. 426, we reverse the order dismissing the indictment of Robert McGee, reverse the order granting a reconsideration of the McGee judgment, and we reinstate the judgment in which McGee was found guilty and sentenced to a term of nine (9) months imprisonment to be

---

9. If the appellees were successful in having Md. Ann. Code art. 27, § 139 (a) declared to be unconstitutional, they may be in the position of a general who won the battle and lost the war. This is so because by virtue of Article 5 of the Maryland Declaration of Rights "the Inhabitants of Maryland are entitled to the Common Law of England . . . and to the benefit of such English statutes as existed on the Fourth day of July," 1776. The common law crime of escape and prison breach were in effect in Maryland on July 4, 1776. At common law there was no maximum penalty for escape or prison breach, and, in fact, in several cases the death penalty was applied. Kilty, *Report of English Statutes* (1811); Fabian v. State, 3 Md. App. 270, 277 n. 2, 239 A. 2d 100, 105-06 n. 2 (1968).

The Legislature, in Laws 1809, ch. 138, enacted an escape statute and, thus, repealed the application of the common law of escape and prison breach in this State. If, however, the statute were unconstitutional, the possibility exists that we would revert to the common law.

We are not to be understood as holding that if section 139 (a) is unconstitutional that the common law crime is resurrected, and escapees are subject to trial under its provisions. Indeed, we express no opinion thereon but merely point to the possibility.

served consecutively to the sentence he was serving at the time of his escape.

> *Orders of dismissal of indictments in the following cases are reversed and the cases are remanded to the Circuit Court for Anne Arundel County for further proceedings: No. 20,455; No. 20,642; No. 20,473; No. 20,491; No. 20,581; No. 20,566; No. 20,586; No. 20,603; No. 20,604; No. 20,639; No. 20,439; No. 20,523; No. 20,698; No. 20,709; No. 20,811; No. 20,812; No. 20,823; No. 20,892; No. 20,893; No. 20,894; No. 20,895; No. 20,446.*
>
> *Order of dismissal on indictment 20,460 is reversed; order granting motion for reconsideration is reversed; judgment entered on verdict is reinstated.*
>
> *Costs to be assessed equally to appellees.*