CARL CLARK *v.* STATE OF MARYLAND

[No. 72, September Term, 1978.]

\* \* \*

JOSEPH STUTZMAN *v.* STATE OF MARYLAND

[No. 74, September Term, 1978.]

\* \* \*

ROGER E. PRITCHARD *v.* STATE OF MARYLAND

[No. 75, September Term, 1978.]

*Decided January 5, 1979.*

In No. 72, *Thomas J. Saunders, Assistant Public Defender,* with whom were *Alan H. Murrell, Public Defender,* and *George E. Burns, Jr., Assistant Public Defender,* on the brief, for appellant Carl Clark.

In Nos. 74 & 75, *John W. Sause, Jr., District Public Defender,* with whom was *Stefan R. Skipp, Assistant Public Defender,* on the brief in No. 74, for appellants Joseph Stutzman and Roger E. Pritchard.

*F. Ford Loker, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Clarence W. Sharp, Assistant Attorney General,* on the brief, for appellee.

ORTH, J., delivered the opinion of the Court.

In Maryland, it is a statutory felony for a person to escape from a place in this State in which he is legally detained or confined. The punishment upon conviction is confinement for whatever additional period, not exceeding ten years, as the court may adjudge, except that for escapes, not involving an assault, from the "Maryland Correctional Institution — Hagerstown or the Maryland Correctional Training Center — Hagerstown or any juvenile institution," the sentence may not exceed confinement for three years.[1] The sentence imposed shall be consecutive to the sentence under which the

---

1. For ease of expression, this limitation on the sentence is referred to hereinafter as "the three year exception."

inmate was originally confined and may not be suspended. Maryland Code (1957, 1976 Repl. Vol.) art. 27, § 139 (a).[2]

Each of the appellants escaped from a place in this State in which he was legally confined. Carl Clark escaped from the Maryland Correctional Camp Center in Anne Arundel County on 19 August 1977. Joseph Stutzman and Roger E. Pritchard escaped from the Eastern Correctional Camp in Queen Anne's County, Stutzman on 1 June 1975 and Pritchard on 21 June 1976. Each of appellants was duly charged, convicted and sentenced to the jurisdiction of the Department of Correction — Clark for three months and Stutzman and Pritchard for eighteen months, the sentences to run consecutively to the sentences then being served. Each noted an appeal to the Court of Special Appeals. We ordered the issuance of writs of certiorari before decision by that court.

## I

Below, each of appellants sought dismissal of the indictment returned against him on the ground that § 139 (a) of art. 27 was unconstitutional as denying equal protection of the laws.[3] Each motion to that end was denied by the respective trial court. The appellants pursued the contention in their briefs on appeal, but in oral argument before us they abandoned the position that the whole of § 139 (a) was unconstitutional and focused their attack on the three year exception.[4]

---

2. To all intent and purpose this was the status of the law applicable to appellants here. Acts 1975, ch. 280, effective 1 July 1975, divided § 139 of art. 27 into subsections. The amendment made several changes in style but no change in the substance of the former provisions comprising the new § (a). "Any juvenile institution" was added to the places of detention in the three year exception by Acts 1975, ch. 825, effective 1 July 1975. Acts 1978, ch. 188, approved 2 May 1978 and effective from date of passage, deleted the two Hagerstown facilities from the three year exception.

3. No State shall "deny to any person within its jurisdiction the equal protection of the laws." U. S. Const., amend. XIV, § 1.

4. Appellants indicated that this tactic was taken to obviate the possibility that if the entire escape statute was voided the common law might be resurrected to their detriment. The General Assembly created a statutory crime of escape which was analogous to the common law offense. Baker v. State, 205 Md. 42, 45, 106 A. 2d 692 (1954); State v. Magliano, 7 Md. App. 286, 288, 255 A. 2d 470 (1969). The common law and statutory history of the crime was traced in Fabian v. State, 3 Md. App. 270, 274-279, 239 A. 2d 100

264

(1)

Essential to the position that only the three year exception offends the constitutional guarantee is that this part of the statute is severable, and appellants apparently so concede. In any event, we think it clear that it is severable. The first statute proscribing escape was passed on 6 January 1810. Acts 1809, ch. 138, § 32. A lesser penalty for escapes under certain circumstances first appeared by amendment over a hundred and fifty years later. Acts 1963, ch. 157. *See State v. Schuller,* 280 Md. 305, 318-321, 372 A. 2d 1076 (1977); *Davidson v. Miller,* 276 Md. 54, 83, 344 A. 2d 422 (1975); *Shell Oil Co. v. Supervisor,* 276 Md. 36, 48, 343 A. 2d 521 (1975). *Compare Wheeler v. State,* 281 Md. 593, 607-609, 380 A. 2d 1052 (1977), *cert. denied,* 435 U. S. 997 (1978).

We have serious doubt that appellants have standing to contest the constitutionality only of the three year exception. "The very essence of civil liberty certainly consists in the right of every individual to claim the protection of the laws, *whenever he receives an injury." Marbury v. Madison,* 5 U. S. (1 Cranch) 137, 163 (1803) (emphasis added). *See Baker v. Carr,* 369 U. S. 186, 208, 82 S. Ct. 691 (1962); *Barrows v. Jackson,* 346 U. S. 249, 255, 73 S. Ct. 1031 (1953). Thus, the general rule is that a person may only assert his own constitutional rights or immunities. *McGowan v. Maryland,* 366 U. S. 420, 429, 81 S. Ct. 1101 (1961). "[O]ne to whom application of a statute is constitutional will not be heard to attack the statute on the ground that impliedly it might also be taken as applying to other persons or other situations in which its application might be unconstitutional." *United States v. Raines,* 362 U. S. 17, 21, 80 S. Ct. 519 (1960). We observed in *State v. Cherry,* 224 Md. 144, 155, 167 A. 2d 328 (1961) that although as a general rule in criminal prosecutions the accused has the right to assert the invalidity of the law under which he is being prosecuted, he must show that his rights are adversely affected by the statute and more

(1968). *See* Stewart v. State, 275 Md. 258, 261-262, 340 A. 2d 290 (1975). At common law there was no maximum penalty for escape or prison breach, and in several cases the death penalty was applied. *Fabian* at 277, n. 2.

particularly that his rights are thus affected by the particular feature of the statute alleged to be in conflict with the constitution, it not being sufficient that the statute may impair the rights of others. To like effect, *see Brown v. State,* 177 Md. 321, 327, 9 A. 2d 209 (1939); *State v. Case,* 132 Md. 269, 272, 103 A. 569 (1918); *Crouse v. State,* 130 Md. 364, 371, 100 A. 361 (1917); *Parker v. State,* 99 Md. 189, 200, 57 A. 677 (1904); *Hughes v. State,* 14 Md. App. 497, 501, 287 A. 2d 299, *cert. denied,* 265 Md. 739, *cert. denied,* 409 U. S. 1025 (1972); *Lashley v. State,* 10 Md. App. 136, 143-144, 268 A. 2d 502, *cert. denied,* 259 Md. 733 (1970), *appeal dismissed, cert. denied,* 402 U. S. 991 (1971). In other words, a person challenging the validity of a statute on equal protection grounds "cannot rely on theoretical inequalities, or such as do not affect him, but must show that he is himself affected unfavorably by the discrimination of which he complains." *Roberts & Schaefer Co. v. Emmerson,* 271 U. S. 50, 55, 46 S. Ct. 375 (1926).

None of the appellants received a sentence which imposed confinement exceeding three years. It is not enough that each of them *might* have been sentenced to a term greater than the maximum permitted with regard to an escape from one of the Hagerstown facilities or a juvenile institution. None, in fact, were so punished. Accepting that the statute establishes a favored class of those who escape from one of the Hagerstown facilities or any juvenile institution, none of appellants received a sentence greater than that authorized for such class, so none of them suffered an actual injury. Appellants seek only to strike down a part of the statute which has not affected them adversely, and it may well be that they have no standing to do so.[5]

---

5. In State v. Rogers, 40 Md. App. 573, 392 A. 2d 1186 (1978) and Carter v. State, 38 Md. App. 400, 381 A. 2d 309, *cert. denied,* 282 Md. 730 (1978), the Court of Special Appeals held that offenders who received a sentence of three years or less had no standing to attack the constitutionality on equal protection grounds of the escape statute in its entirety. The cases before us are not in this posture, and our doubt that appellants have standing to attack the constitutionality of the three year exception on equal protection grounds because they did not receive a sentence of more than three years is not to be taken as any indication whatsoever of how we would rule had they persisted in their challenge to the entire statute. We expressly leave open the standing of a person receiving a sentence of three years or less to attack the whole of § 139 (a) on equal protection grounds.

(2)

Assuming that appellants have standing to pursue their challenge to the constitutionality of the three year exception, they do not prevail. We see no denial of equal protection of the laws arising from it.

The standard of review applicable here is the "rational basis" test, that is, whether "the classification challenged be rationally related to a legitimate state interest." *City of New Orleans v. Dukes,* 427 U. S. 297, 303, 96 S. Ct. 2513 (1976). We pointed out in *Montgomery Co. v. Fields Road,* 282 Md. 575, 579-580, 386 A. 2d 344 (1978):

> The basic rules which guide a court in applying this test were set down over sixty-five years ago by Mr. Justice Van Devanter for the Supreme Court in *Lindsley v. Natural Carbonic Gas Co.,* 220 U. S. 61, 78-79, 31 S. Ct. 337, 340, 55 L. Ed. 369 (1911):
>
> > "The rules by which this [equal protection] contention must be tested, as is shown by repeated decisions of this court, are these: 1. The equal protection clause of the Fourteenth Amendment does not take from the State the power to classify . . . but admits of the exercise of a wide scope of discretion in that regard, and avoids what is done only when it is without any reasonable basis, and therefore is purely arbitrary. 2. A classification having some reasonable basis does not offend against that clause merely because it is not made with mathematical nicety or because in practice it results in some inequality. 3. When the classification in such a law is called in question, if any state of facts reasonably can be conceived that would sustain it, the existence of that state of facts at the time the law was enacted must be assumed. 4. One who assails the classification in such a law must carry the

burden of showing that it does not rest on any reasonable basis, but is essentially arbitrary."

*See* cases cited in Fields Road at 580. We put it concisely in *Tatelbaum v. Pantex Mfg. Corp.,* 204 Md. 360, 370-371, 104 A. 2d 813 (1954), citing *Lindsley* and *Salsburg v. State,* 201 Md. 212, 94 A. 2d 280 (1953), *aff'd,* 346 U. S. 545 (1954):

[A] classification made by a Legislature is presumed to be reasonable in the absence of clear and convincing indications to the contrary, and the person who assails it has the burden of showing that it does not rest upon any reasonable basis, but is essentially arbitrary.

We made clear in *Wheeler,* 281 Md. 593, that in the light of our prior decisions and especially *Aero Motors v. Adm'r, M.V.A.,* 274 Md. 567, 337 A. 2d 685 (1975); *Md. St. Bd. of Barber Ex. v. Kuhn,* 270 Md. 496, 312 A. 2d 216 (1973); *Adm'r, Motor Veh. Adm. v. Vogt,* 267 Md. 660, 299 A. 2d 1 (1973); and *Tatelbaum,* that the principles enunciated in *Lindsley* have lost none of their vitality.

In applying the rational basis test to the three year exception, we look first to the nature of the institutions designated in the exception. As we have indicated, the exception first appeared in the escape statute by Acts 1963, ch. 157, in this language:

However, for escapes from the Reformatory for Males which have not involved an assault, the sentence shall not exceed confinement for three years. [Md. Code (1957, 1967 Repl. Vol.) art. 27, § 139.]

A new reformatory had been established by Acts 1931, ch. 366. It was to be located in Washington County and known as the Maryland State Penal Farm. Its name was changed to the "Maryland State Reformatory for Males" by Acts 1945, ch. 519, which provided that it "shall be a place of confinement and training for male offenders from sixteen (16) years to twenty-five (25) years of age, both inclusive." The name of

the facility was again changed by Acts 1964, ch. 45, which declared that it be called the "Maryland Correctional Institution — Hagerstown." Both it and the Maryland Correctional Training Center — Hagerstown are now under the Division of Correction. Code (1957, 1976 Repl. Vol.) art. 27, § 689 (d) and (d-1). The law relating to the Maryland Correctional Institution — Hagerstown is set out in § 689 (d):

> The Maryland Correctional Institution — Hagerstown, ... is a place of confinement and training for male offenders from sixteen (16) to twenty-five (25) years of age, both inclusive. In those cases in which the judge of the Supreme Bench of Baltimore City, who is assigned to exercise jurisdiction in juvenile causes, may waive jurisdiction and order a minor under the age of sixteen, and the judge of any circuit court in any county exercising jurisdiction in juvenile causes, may waive jurisdiction and order a minor under the age of eighteen, to be held for action under the regular procedure that would follow if such act or acts had been committed by an adult, then and in that event the judge presiding in the criminal courts of Baltimore City and the judge of the circuit court of any county upon assuming jurisdiction in such case and upon conviction may commit the minor to the Maryland Correctional Institution — Hagerstown regardless of age. The courts of this State, instead of imposing sentences of fixed duration upon male offenders included within this subsection may sentence them to the Maryland Correctional Institution — Hagerstown for an indeterminate period of time which may not exceed the maximum term of imprisonment provided by statute for the offenses of which said person was convicted; and in the event no penalty is prescribed by statute for said offenses then the court shall prescribe the maximum term of imprisonment; but nothing in this sentence applies to any case in which the sentence is life imprisonment or to the service of time for nonpayment of a fine.

*See* Acts 1947, ch. 924; Acts 1951, ch. 13; Acts 1964, ch. 45; Acts 1966, ch. 385.

Looking at the three year exception provision in § 139 (a) with the provisions of § 689, we see no constitutional infirmity with respect to equal protection. The three year exception encompassed institutions for the confinement of youthful male offenders, i.e., those from sixteen to twenty-five years of age (the two Hagerstown facilities) and juvenile offenders (any juvenile institution). It is obvious that the Legislature believed that such offenders would ordinarily not be hardened or dangerous criminals and were better confined in institutions more adapted to their rehabilitation than other places of confinement where they would intermingle with older, seasoned and dangerous criminals.[6] We find it plain upon application of the rules by which the equal protection contention must be tested to the statutory scheme evident from § 139 (a) and § 689 that the difference in permissible punishment between escapers from the institutions specified in the challenged exception and escapers from other places of confinement is sufficiently related to a legitimate state interest so as not to be without any reasonable basis and purely arbitrary. *Accord, Alex v. State,* 484 P. 2d 677 (Alaska 1971); *People v. Gardner,* 15 Ill. App. 3d 255, 304 N.E.2d 125 (1973); *State v. Pebworth,* 260 La. 647, 257 So. 2d 136 (1972).

However, our conclusion that the three year exception in § 139 (a) when viewed with § 689 has no equal protection infirmity does not furnish a complete resolution of the issue. Imposed over § 689 is the mandate that offenders are to be sentenced to the jurisdiction of the Division of Correction instead of to institutions. This requirement was first established by Acts 1967, ch. 695, and, as now in effect, appears in Md. Code (1957, 1976 Repl. Vol.) art. 27, § 690. The law is applicable to all judges exercising criminal jurisdiction,

---

6. We observe that the Legislature was careful to exclude from the exception those offenders whose escape from a designated institution involves an assault. If it does, the escaper is liable to a full ten years confinement for the escape, even though he be a "youth" or a juvenile.

§ 690 (a), when a sentence of three months or more is imposed, subsection (c).[7] Subsection (b) reads in relevant part:

Notwithstanding any of the provisions of this article or any other law to the contrary, on and after June 1, 1967, judges, in the sentencing of convicted persons (1) for any offense for which the provisions of this article or any other law requires the imprisonment to be served at any one of those institutions enumerated in § 689 of this article or (2) any offense for which prior to June 1, 1967, the sentence was made for whatever reason to one of those institutions in § 689, shall in all such cases sentence such persons to the jurisdiction of the Department of Correction. All such persons shall be committed to the custody of the Commissioner of Correction and delivered to him for imprisonment. Thereafter all such persons shall be held confined in, assigned to or transferred to such of the institutions and facilities under the jurisdiction of the Department as the Department from time to time may order, including State Police barracks where such use is convenient and practical.

This provokes inquiry of the use the Division of Correction is making of the Hagerstown facilities.[8] In each case *sub judice,* the testimony of Howard Lyles, given on 24 February 1978 at the trial of State v. Rogers, et al. in the Circuit Court for Anne Arundel County, which involved the issue here before us, was before the trial court.[9] Lyles testified that he had worked for the Division of Correction, under its various designations, for twenty years. Since 9 November 1977, he has been the Assistant Commissioner of Operations, and for

7. Under Acts 1967, ch. 695, § 689 (c) included the provision: "Nothing in this section shall prevent any judge from committing any minor to any facility to which minors may be committed under the law as it existed prior to June 1, 1967." Acts 1975, ch. 854 deleted this provision.

8. As we have indicated, note 2, *supra,* Acts 1978, ch. 188, effective 2 May 1978, removed the two Hagerstown facilities from the three year exception in § 139 (a), leaving only escapes from juvenile institutions subject to the penalty limitation.

9. *See* State v. Rogers, 40 Md. App. 573, 392 A. 2d 1186 (1978). Petition for a writ of certiorari to the Court of Special Appeals was filed in the Court of Appeals on 19 December 1978. No action has as yet been taken thereon.

the preceding thirty-four months, he was "acting" in that capacity. The duties and responsibilities of the Assistant Commissioner of Operations go to the administration of the Division, including classification, social services, security and general operation of the facilities. He described the Hagerstown facilities as a complex of two major correctional institutions. Both are medium security, meaning that the inmates need armed control but sentences are shorter — up to twenty years — than those being served by inmates in a maximum security institution.[10] Predominantly youthful offenders, namely those up to age 22, are housed in the Maryland Correctional Institution — Hagerstown (MCI) and the Maryland Correctional Training Center — Hagerstown (MCTC). MCI is the older institution, and its inmates, many of whom are first offenders or parole violators, usually are serving longer sentences than those persons who are confined in MCTC. The Maryland Correctional Institution — Hagerstown was originally built for young offenders above juvenile age but not old enough to be placed in an adult institution. It was a "reformatory" and not classified as a juvenile institution. There are some adults being placed there for the reason that there is not space in the adult facilities. There are also some exceptional cases, such as inmates needing special protective custody, for which the House of Correction or the Penitentiary were not appropriate. Lyles made clear that the Hagerstown facilities had not become a full part of the adult system. They are, in general, being

10. Lyles testified that there was one maximum security institution, the Maryland Penitentiary. It houses those who are believed to be a very serious danger to society and those with strong impulses for escape. Generally the inmates have received sentences longer than twenty years. There are only a small number of youthful and juvenile offenders — only those who have been "management problems" at the Hagerstown institutions.

According to Lyles, the Maryland House of Correction is a medium security institution. It is designed for adults but there are youthful offenders there, returned from escapes. However, youthful offenders are not "programed" there unless there are circumstances prohibiting their being housed at the Hagerstown complex.

The Maryland Correctional Camp Center is a minimum security institution. It is designed to accept adults or young offenders who have progressed through the system and merit being placed where they can participate in community programs and make progress toward release. It does, in fact, house both adult and youthful offenders who have been found not to need close supervision and armed control.

operated in keeping with the original purpose — "the philosophy is there." "[P]redominantly the age groups are there. . . . And the only diversion, more or less, from the original establishment of the place, or the philosophy of why it was established is now due to space." It was Lyles' opinion that about twenty-five percent of the inmates were there because of lack of space. When room is available in other institutions, those who are in the Hagerstown complex because of space problems in other institutions are moved. "If space was available [elsewhere], then we would revert back to having ... all of the Hagerstown complex being for young offenders."

### (3)

Under the *Lindsley* guidelines, the equal protection clause admits the exercise of a wide scope of discretion in the state to classify, and avoids what is done only when it is without any reasonable basis and therefore is purely arbitrary; a classification having some reasonable basis does not offend equal protection merely because it is not made with mathematical nicety or because in practice it results in some inequality; and if any state of facts reasonably can be conceived that would sustain a classification, the existence of that state of facts at the time the law was enacted must be assumed. Applying these rules, there is no doubt that the evidence adduced through the testimony of Lyles demonstrated that there was a "reasonable basis" for distinguishing between escapes from the Hagerstown facilities and juvenile institutions, which did not involve an assault, and escapes from other places of confinement. We do not find Lyles' testimony vague and of dubious value merely because he did not define "adult" as used by him. The sum of his testimony was that the Hagerstown complex was being used substantially as spelled out in § 689 (a). There was no evidence that any juvenile institution was being misused.

In short, there was no clear and convincing indication contrary to the presumption that the classification made by the Legislature was reasonable. Appellants failed to carry the burden of showing that the three year exception which they

assailed, did not rest on a reasonable basis, but was essentially arbitrary. We hold that the trial courts did not err in denying the motions to dismiss the indictments in the context of equal protection of the laws.

## II

Pritchard, upon his conviction of escape, was subject to a sentence of confinement for whatever additional period, not exceeding ten years, as the court may adjudge. He was sentenced to a term of eighteen months.

> [I]n this State, the awesome responsibility of imposing sentence is within the exclusive domain of the trial judge (subject to modification pursuant to the review of criminal sentence provision contained in Maryland Code (1957, 1971 Repl. Vol., 1974 Cum. Supp.) Art. 27, § 645JA-645JG), and thus his determination in this regard cannot be reevaluated upon appellate review unless either it is based upon an impermissible consideration, *Costello v. State,* 237 Md. 464, 469, 206 A. 2d 812 (1965); *Gleaton v. State,* 235 Md. 271, 277, 201 A. 2d 353 (1964); *Mitchell v. State,* 82 Md. 527, 534, 34 A. 246 (1896), or is passed in violation of statute, *State Ex Rel. Sonner v. Shearin,* 272 Md. 502, 325 A. 2d 573 (1974). [*Johnson v. State,* 274 Md. 536, 538, 336 A. 2d 113 (1975).]

Since the term imposed in Pritchard's case was well within the longevity limits set by the statute, it is not in violation of the duration of imprisonment allowable by law. Pritchard acknowledges the general rule that "[w]here punishment is prescribed by statute and the sentence does not exceed statutory limits, [an appellate] court ordinarily cannot review it even on direct appeal." *James v. State,* 242 Md. 424, 429-430, 219 A. 2d 17 (1966). The narrow exception which this Court has recognized is where it appears that the sentence is dictated not by a sense of public duty, but by passion, prejudice, ill-will or any other unworthy motive, such a sentence will be reviewed by the appellate court.

Impermissible considerations in imposing sentence may be indicated where the punishment is grossly and inordinately disproportionate to the offense, *id.* at 430; *Swan v. State,* 200 Md. 420, 425, 90 A. 2d 690 (1952); *Reid v. State,* 200 Md. 89, 93, 88 A. 2d 478, *cert. denied,* 344 U. S. 848 (1952), or from remarks of the sentencing judge, *Johnson,* 274 Md. at 538-540; *Mahoney v. State,* 13 Md. App. 105, 113, 281 A. 2d 421 (1971), *cert. denied,* 264 Md. 750, *cert. denied,* 409 U. S. 978 (1972). Pritchard alleges that remarks of the sentencing judge immediately prior to sentencing showed that the punishment imposed was improperly motivated. After the court had rendered a verdict of guilty Pritchard was called by his counsel and testified under oath in mitigation of punishment. Md. Rule 772 c. It was brought out that he had been unable to keep a job and had difficulty obtaining employment — "they just kept on turning me down for work." He complained about his treatment by various authorities — "I think they have taken grudges against me" — and that he was shifted around from place to place — "Well I made my effort to get the jobs and go to work but everytime I did they shot me down and sent me somewhere else." He admitted that he had experimented with alcohol and drugs but denied that he had ever been dependent upon them or sold them, although there had been a charge placed against him of conspiring to violate the drug laws. The comments of the judge to which Pritchard points were made in light of this testimony. The court inquired of Pritchard if he read newspapers and magazines (Pritchard said he did), apparently with reference to Charles Manson, for it then asked if he had ever heard of Manson (Pritchard said he had). The court then wanted to know if there was any reason why Pritchard had "that beard and that long hair (Pritchard said there was no reason for it). The court then asked Pritchard: "Don't you think you look something like [Manson]?" Pritchard replied: "No, sir." Whereupon the court said:

> "You don't, well I can notice a resemblance and I think it might have something to do with your inability to get a job or get along with some of these people."

In the frame of reference in which this remark was made, we do not believe that it indicated that the sentence imposed was impermissibly motivated. The court was simply suggesting a possible reason why Pritchard had difficulty obtaining employment and keeping a job, and why he did not enjoy a better relationship with the authorities. Later the court said to Pritchard: "Now, as I said before, maybe your appearance hasn't helped you too much because there are a lot of employers that wouldn't employ people that look like Manson. Now you better think about that. Of course, you can grow hair down to your waist as far as the law is concerned."

Pritchard also complains about the court's inquiry and comments concerning his use of drugs. The inquiry and comments were no more than a reasonable follow-up to Pritchard's testimony on the subject, and we do not deem them to be any indication of an impermissible consideration in the sentencing.

Pritchard further observes that the court "erroneously suggested" that he had been charged with taking an automobile. This matter was promptly cleared up by the prosecutor to the court's satisfaction, and we believe that it had no significance in the court's determination of punishment.

We think that the court's concluding remarks to Pritchard demonstrated its fair attitude and lack of any unworthy motive:

> Now you realize you have now facing you almost three years before you get a sentence here. You have started out on the wrong foot, for the balance of your time. I don't think you are violent, I am sure that you are not, there is nothing in your record before the Court to indicate that but it's just an indifference to authority that's getting you in trouble. So have the record show, as a punishment for your offense, you will be committed to the Commissioner of Correction for a period of eighteen months. Under the law it has to be consecutive to the balance of your sentence. Now good luck to you.

The short of it is that nothing in the questions and comments of the trial court show that the imposition of the sentence of only eighteen months out of a permissible ten years was dictated, not by a sense of public duty, but by passion, prejudice, ill-will or any other unworthy motive.

### III

Stutzman suggests that the trial court did not have jurisdiction to try and to sentence him because he was returned to Maryland "without sanction of either the Interstate Agreement on Detainers or the Uniform Criminal Extradition Act."

A detainer was lodged against Stutzman by Maryland while he was incarcerated in the Oregon State Penitentiary after his escape from legal confinement in an institution of this State. He wrote a letter to the Investigations Division of the Maryland State Police. The docket entries of his case show that the letter was filed in the Circuit Court for Queen Anne's County and a copy mailed to the State's Attorney. It was admitted in evidence at his trial. In the letter, Stutzman said:

> I wish for you to come get me and give me my time, bring me back here to finish my Oregon sentence, and if it exceeds my Oregon sentence, come get me again to finish my sentence in Maryland.

> I realize it will cost the State of Maryland a lot of money, but if you want to try me come and get it over with as required by the law.

Upon hearing, the trial court held that Stutzman was "here legally" and denied the motion to dismiss the indictment which Stutzman had made on the ground of non-compliance with the "Extradition Act."

Stutzman's request for final disposition was a waiver of extradition. Code (1957, 1976 Repl. Vol.) art. 27, § 616D (e) of the Interstate Agreement on Detainers. The prosecutor complied with Stutzman's request, liberally construing the Interstate Agreement so as to effectuate its purposes. § 616J. Stutzman was returned to Maryland and tried within

the time prescribed by § 616D (a). The contention that the trial was "without sanction of either the Interstate Agreement on Detainers or the Uniform Criminal Extradition Act" is without merit.

In any event, Stutzman to all intent and purpose conceded that he was properly before the court. He noted in his brief that he was constrained to recognize the existence of the holdings of the Supreme Court of the United States, this Court and the Court of Special Appeals to the effect that even a forcible return of an accused to a state to stand trial on a criminal charge did not divest the court of jurisdiction. In *Frisbie v. Collins,* 342 U. S. 519, 522, 72 S. Ct. 509, *reh. denied,* 343 U. S. 937 (1952), the Supreme Court said that it "has never departed from the rule announced in *Ker v. Illinois,* 119 U. S. 436, 444, 7 S. Ct. 225, 229, 30 L. Ed. 421, that the power of the court to try a person for crime is not impaired by the fact that he had been brought within the court's jurisdiction by reason of a 'forcible abduction.' " The law of Maryland is not to the contrary.

> Authority to sentence at all is incident to and a consequence of the power to try an accused, and the right to try is founded on the fact that the crime was committed within the jurisdiction of the Court and upon the further fact that the prisoner after being indicted is present in person before the Court during the trial. It is not material how or by what means he was brought into Court, . . . . [*Rigor v. The State,* 101 Md. 465, 470, 61 A. 631 (1905)].

In *Austin v. Director,* 237 Md. 314, 206 A. 2d 145 (1965) we said:

> The fact that petitioner was forcibly returned from Pennsylvania by authorities to stand trial in Maryland where his criminal conduct took place and where he had been indicted prior to his flight is not of itself in a criminal proceeding legally significant. [*Id.* at 317-318].

278

*Accord, Bell v. Warden,* 215 Md. 614, 615-616, 137 A. 2d 118 (1957); *McGuire v. State,* 200 Md. 601, 609, 92 A. 2d 582 (1952), *cert. denied,* 344 U. S. 928 (1953); *Crowley v. State,* 25 Md. App. 417, 423-424, 334 A. 2d 557 (1975); *Swann v. State,* 7 Md. App. 309, 310-311, 255 A. 2d 457 (1969), *cert. denied,* 256 Md. 748 (1970).

We hold that the trial court did not err in denying the motion to dismiss with respect to the ground that Stutzman had been illegally returned to Maryland.

> *Judgment in each of Clark v. State, No. 72, September Term, 1978; Stutzman v. State, No. 74, September Term, 1978; and Pritchard v. State, No. 75, September Term, 1978, affirmed.*
>
> *Costs to be paid by each appellant in the amount chargeable to him.*