FIRST NATIONAL BANK OF RENWICK, Appellee, v. J. H. FRANK, Appellant.

PLEADING: Allegations in General—Contradicting One's Own Pleading. A pleader is not estopped from pleading a state of facts which is absolutely contrary to his pleaded state of facts in a former pleading in the same court and in the same trial. (See Book of Anno., Vol. 1, Sec. 11199, Anno. 20 *et seq.*)

Headnote 1: 31 Cyc. p. 89.

*Appeal from Wright District Court.*—SHERWOOD A. CLOCK, Judge.

MARCH 15, 1927.

Suit on two promissory notes, to which was filed an answer and counterclaim. Plaintiff replied, certain rulings were made, plaintiff filed an amended and substituted petition, and made a motion to transfer this cause to equity. At the same time, a motion was made by defendant to strike the amended and substituted petition. The latter motion was overruled, and the former sustained, and defendant appeals.—*Affirmed.*

*Ladd & Rogers* and *Healy, Thomas & Healy,* for appellant.

*Sullivan, McMahon & Linnan, McGrath, Archerd & McGrath,* and *Kelleher & Mitchell,* for appellee.

ALBERT, J.—A rather extended statement of the record in this case is necessary to a clear understanding of the questions raised. In November, 1923, appellee filed a petition in two counts, bottomed on two promissory notes made by appellant to appellee, amounting to $7,336, drawing 8 per cent interest; and judgment was asked for $7,826.18. One H. H. Reed, on the 20th day of January, 1921, executed to R. W. Frank two promissory notes, for $2,000 and $2,770, respectively, due in one year, with 8 per cent interest. These notes were indorsed by R. W. Frank to appellee bank. J. H. Frank, in his counterclaim, sets up these two notes, and alleges, in addition to the above facts, that he is now the holder of said notes, on the back of which is the following indorsement: "Demand, notice and protest waived. [Signed] First National Bank of Renwick, Iowa, By R. M. Goettsch, Cashier." He demands that he be allowed, by way of counterclaim, on the indorsement of the bank on these notes, the sum of $5,636.35.

To this counterclaim appellee replied in two divisions: Admits its indorsement on the back of said notes; admits that said notes were surrendered and delivered by appellee to the appellant, J. H. Frank; denies that said notes were to be or were indorsed in blank by appellee to Frank; affirmatively asserts that said notes were to be and were delivered and transferred to J. H. Frank without recourse on the appellee; denies that said indorsement was made in the transfer of said notes to J. H. Frank; denies that Frank is entitled to any benefit of these indorsements by the bank.

In the second division it pleads that R. W. Frank was heavily indebted to appellee bank; that to secure a part of said indebtedness the bank held a chattel mortgage on 38 head of registered cattle and 14 graded cows belonging to Frank; that it held additional security for said indebtedness, among which were these two notes made by H. H. Reed to R. W. Frank, and also a life insurance policy in the sum of $10,000 on the life of said R. W. Frank, which had been assigned to appellee; that, when the two Reed notes were transferred to appellant, Frank indorsed and guaranteed said notes, and after the notes came into the hands of appellee bank, they were by the bank hypothecated with the Federal Reserve Bank of Chicago, and for that purpose the indorsement of the bank, by its cashier, was placed

on the back of each of said notes; that later, by settlement with
the Federal Reserve Bank, these two Reed notes were returned
to appellee bank; that subsequently, when these Reed notes were
turned over to J. H. Frank, appellee bank failed and neglected,
through oversight, to erase its indorsement on the back thereof;
that later, R. W. Frank transferred to appellee bank other notes
in an amount equal to the sum owed on the Reed notes, but the
Reed notes were still held by the bank as additional collateral
security to the indebtedness of R. W. Frank; that, in January,
1919, R. W. Frank, J. H. Frank, and C. A. Packard, who was
trustee under the chattel mortgage above referred to, and ap-
pellee bank had an oral agreement, the substance of which was
that J. H. Frank would take over all of the property of the said
R. W. Frank and assume his indebtedness to the bank, and
appellee agreed to turn over to said J. H. Frank, without in-
dorsement and without recourse to appellee, all of the collateral
notes held by said appellee as security for the indebtedness of
R. W. Frank, to cancel all notes evidencing the indebtedness of
said R. W. Frank to appellee, and surrender the life insurance
policy above referred to, in consideration of which J. H. Frank
agreed to execute and deliver to appellee his notes for the full
amount of the indebtedness owed appellee by the said R. W.
Frank, less $500; that this agreement was carried out; that said
agreement was subsequently reduced to writing, a copy thereof
being attached to the pleading. It is further alleged that,
through oversight and mistake in drawing said written agree-
ment, the parties failed and omitted to incorporate therein that
portion of the verbal agreement wherein it is agreed by and be-
tween all of said parties that all notes held by the appellee as
collateral to the indebtedness of R. W. Frank were to be sur-
rendered and delivered to J. H. Frank without indorsement by
appellee, and without recourse on appellee; that, by oversight
and mistake, said parties also failed and omitted to incorporate
in said agreement that portion of the verbal agreement by the
terms of which the insurance policy held by appellee was to be
surrendered to appellant, J. H. Frank; that, as a part of the
collateral of R. H. Frank held by the bank at the time, were the
Reed notes in controversy; that the same were surrendered to
J. H. Frank at the time of the surrender of said notes, and
appellee failed, by oversight and mistake, to erase and expunge

the indorsement of appellee thereon. Appellee prays that its indorsement on the back of said Reed notes, which is the basis of appellant's counterclaim, be canceled, expunged, erased, and annulled, and that said notes be reformed accordingly, and that said indorsement be stricken from said notes; and that the original agreement, above referred to, between the parties be modified, amended, and reformed, so as to embody the real contract between the parties. Whereupon, appellee filed a motion to transfer the case to equity, so far as it relates to the reformation of the contract and the expunging of the indorsement on the notes, for the purpose of trying the equitable issues tendered by the reply.

Appellant, J. H. Frank, then filed a motion and demurrer. The motion was to strike part of the allegations of Division 1 of appellee's reply, and the demurrer was to Division 2. The substance of the demurrer was that the facts alleged do not constitute a legal or enforcible contract between appellee and appellant, in that the alleged contract limiting the indorsement of the appellee on the Reed notes rested in parol, and that oral evidence cannot be introduced to modify, vary, or reform the original contract above referred to, or to cancel or expunge the indorsement of appellee bank on said Reed notes.

Some other grounds are set out in this motion, which need not be here stated.

Motion to transfer to equity was resisted, whereupon appellee filed an amendment to the reply, in which it elaborated more fully the transaction by which J. H. Frank assumed the indebtedness of R. W. Frank.

On March 4, 1924, motion and demurrer of the appellant to the reply were submitted to the court, and the demurrer was sustained to Division 2 of the reply. Whereupon, appellant gave notice of appeal, but did not perfect same. On November 13, 1924, appellee filed what is denominated "an amended, substituted and supplemental petition in equity," in which is contained an original suit on the two notes of Frank which were sued on in the original petition. It is alleged that these two notes sued on represent a part of the original indebtedness of R. W. Frank to appellee; that a contract of novation was made between R. W. Frank and J. H. Frank and appellee bank, a copy of which is attached to appellee's amended and substituted

petition; that R. W. Frank's indebtedness to appellee at the time of this written contract exceeded $15,000; and that appellee held, as security for said indebtedness, notes aggregating $14,220, which notes were pledged to appellee by R. W. Frank, as collateral security for the indebtedness owed by Frank to appellee, and among which notes were the Reed notes in controversy herein. Among the terms of said written agreement is the following:

"It is further agreed between the parties hereto that the first party [appellee bank] will use its best efforts to collect on the notes just mentioned, and any and all sums received from the sum collected on the above notes from the makers of these notes are to be applied upon the indebtedness of J. H. Frank, as evidenced by the notes given by him to the First National Bank, of Renwick, Iowa, under this agreement."

It is further alleged that under this written contract the Reed notes remained as collateral security in the hands of appellee bank, and the pledge theretofore made by R. W. Frank was continued in effect by this agreement; that later, J. H. Frank obtained possession of the Reed notes for the purpose of exhibiting the same to his attorney, but that, in violation of his obligation and of the rights of the appellee in the premises, he neglected and failed and refused to return the pledged property to the possession of the appellee; that said pledged notes were the property of the appellee; and that, by virtue of the statutes of the state of Iowa, appellee is entitled to foreclosure of said pledge in an action in equity, and for judgment for the amount due from said drawer, and special execution for the sale of collateral and pledges. It then further pleads the pledging of the Reed notes with the Federal Reserve Bank of Chicago as collateral, and the indorsement of appellee bank thereon made at that time for the purpose of using the same as collateral with the Federal Reserve Bank. Appellee's filing includes a motion to transfer the cause to equity, for the purpose of foreclosing its lien on the Reed notes, etc., and asks a cancellation of its indorsement on the Reed notes.

Appellant resists appellee's motion to transfer to equity, on the ground that it is not entitled to file a second motion to transfer, and that the motion came too late. He also filed a resistance to appellee's application to file its amended, substi-

tuted, and supplemental petition in equity, on the ground, among others, that appellee is estopped by the record to plead herein the allegations set out, wherein it is stated that Frank surreptitiously obtained possession of the pledged property and failed to return the same to appellee. He contends that because, with full knowledge of all the facts, appellee, in its reply and amendment thereto, filed to appellant's counterclaim, alleged, under oath, statements which are at variance or contrary to the statements now made in the amended and substituted petition, appellee cannot thus now change its position. Appellant further contends that appellee elected to stand on its reply, and that appellant, J. H. Frank, has incurred expense defending against the claim set out; that appellee is not entitled to maintain a suit in equity to foreclose its lien on the Reed notes, because it was admitted in the reply that said securities were voluntarily surrendered to J. H. Frank, and thereupon appellee lost the advantage of any lien which it may have had on said notes; that, by reason of the facts alleged in its reply, appellee is estopped to claim a lien on said Reed notes; that the validity of the appellee's defense to appellant's counterclaim has been heretofore adjudicated in the ruling of the court to appellant's demurrer to appellee's reply; that appellee is not entitled to maintain an action in equity to cancel the indorsement upon the Reed notes, for the reason that the issue thus tendered has been heretofore adjudicated by this court against appellee, in that the same issue was heretofore tendered by appellee in its reply thereto, to which appellant, J. H. Frank, demurred, and said demurrer was sustained and appeal taken therefrom, and the same is still pending in this court; that, upon the whole record, appellee tendered no equitable issue.

On December 16, 1925, the court overruled appellant's motion to strike the amended, substituted, and supplemental petition, and sustained the motion of appellee to transfer to equity. Whereupon, appellant, Frank, served notice of appeal to the Supreme Court. Appellee thereupon asked for a default, for want of answer or other issue joined, and offered to prove appellee's case in the event that said cause was ordered. The court thereupon asked counsel for appellant if they desired further time in which to answer in this case. Counsel for appellant replied that they did not request any further time.

Whereupon, appellee introduced his testimony, and appellant's counsel cross-examined. The court entered a decree granting appellee the relief prayed in its amended and substituted petition, after which a second notice of appeal was served by appellant.

. . . The real question in dispute involved in this appeal is a very narrow one. It is insisted that, because appellee, in its original reply, pleaded that the Reed notes had been delivered to J. H. Frank, it cannot, by way of an amended and substituted petition, plead that Frank obtained the notes from appellee under a representation that Frank only wanted to use them temporarily, to exhibit them to his attorney; and that, after Frank thus obtained possession of them, he failed, neglected, and refused to return them to appellee. No one would contend that, if the allegations were that the bank held these Reed notes as collateral, and that by false representation J. H. Frank obtained possession of the same and refused to return them, the bank thereby lost its lien on such collateral security. If it did hold these Reed notes as collateral, then, under the statutes of Iowa, it had a lien thereon; and we do not understand counsel for appellant to contend that such a lien could not be enforced in equity. . Hence, if the facts were as appellee alleged in its amended and substituted petition, there can be no question that the ruling of the court in transferring the case to equity was right, unless it is defeated by resort to the other ground raised in this case.

The question most seriously urged is that appellee, having alleged in its reply that it delivered the Reed notes to Frank in carrying out the terms of the written contract of novation (if it be such), thereby assumed a position with relation to said notes that it cannot afterwards gainsay in a subsequent pleading. We are cited to numerous cases in this court on the question of election of remedies, among which are *Kearney Milling & Elev. Co. v. Union Pac. R. Co.*, 97 Iowa 719; *Ellis v. Annis & Rohling Co.*, 187 Iowa 423; and cases of similar character. We are unable to see where cases of this character have any application. The appellee is asking nothing in its amended and substituted petition which it was not seeking in its reply, and the facts stated on which it seeks the same relief in both instances are practically the same, with the exception of the statements

above noted. There is no effort whatever to change positions, so far as the remedy is concerned.

Our attention is called also to another line of cases in this state, a typical case being *Wapello St. Sav. Bank v. Colton*, 143 Iowa 359, where the court announces the rule, broadly stated, that a litigant cannot try his case piecemeal by basing his action on a given set of facts, and, after meeting defeat in the lower court and also in the Supreme Court, on an appeal, then again, on a retrial of the case by the lower court, assume an inconsistent position; or, as stated in the opinion, he " * * * will not be permitted to experiment with the court in that way. He cannot first blow hot, and, if that does not succeed, try conclusions on blowing cold." The same doctrine has been recognized in *Zalesky v. Home Ins. Co.*, 114 Iowa 516; *City of Sioux City v. Chicago & N. W. R. Co.*, 129 Iowa 694; *Chicago, M. & St. P. R. Co. v. Hemenway*, 134 Iowa 523.

Had appellant followed up his original notice of appeal in the first instance, and the case had finally been decided in this court, we would have a different question; but he did not do this in the instant case, but elected to waive his notice of appeal and file an amended and substituted petition.

The *Colton* case, however, it might be noted in passing, is not authority, in that it was an affirmance by operation of law, this court being equally divided on the question involved.

We do not care to pronounce the rule that, where a person pleads certain facts, he cannot afterwards, in the same trial in the same court, change his pleadings to conform to the actual facts in the case, even though it results in a statement which is directly contrary to what he had in his former pleadings. The fact that it might, as a practical proposition, put him into a very undesirable position in the submission of his case, by reason of the statements in the former pleading, is a question merely of the weight of testimony, and does not reach the heart of the lawsuit. In other words, the fact that, in the trial of the case, he was confronted with statements made in a former pleading, which has been stricken or withdrawn, or passed out of the case as a pleading, by reason of an amended and substituted pleading, is merely an evidentiary question, and not one of controlling importance on which it could be said that the rule of election or the rule of estoppel by pleading can operate.

.We are contented with the ruling of the district court, over-ruling the motion to strike this amended and substituted peti-tion, and also the ruling transferring the cause to equity.—
*Affirmed.*

EVANS, C. J., and DE GRAFF and MORLING, JJ., concur.