517 A 2d 774

David Anthony LEE

v.

STATE of Maryland.

Stanley Lee HALL

v.

STATE of Maryland.

Nos. 913, 914, Sept. Term, 1985.

Court of Special Appeals of Maryland.

Dec. 3, 1986.

Certiorari Granted March 24, 1987.

Nancy S. Forster, Asst. Public Defender (Alan H. Murrell, Public Defender on the brief), Baltimore, for appellants.

Deborah K. Chasanow, Asst. Atty. Gen. (Stephen H. Sachs, Atty. Gen., Baltimore, Andrew L. Sonner, State's Atty. for Montgomery County and Jack I. Hanly, Asst. State's Atty. for Montgomery County on the brief, Rockville), for appellee.

Argued before GILBERT, C.J., and MOYLAN, WILNER, WEANT, BISHOP, GARRITY, ALPERT, BLOOM, ROSALYN B. BELL, KARWACKI, ROBERT M. BELL and WENNER, JJ.

PER CURIAM.

The appellants, David Anthony Lee and Stanley Lee Hall, were jointly tried by a Montgomery County jury, presided over by Judge John J. Mitchell. Both were convicted of 1) attempted second-degree murder, 2) robbery with a dangerous and deadly weapon, 3) the use of a handgun in the commission of a crime of violence, and 4) the unlawful carrying of a handgun. Each appellant filed a separate appeal.

The appellant Lee raised two contentions:

1) That his pretrial motion to suppress physical evidence as the fruit of an unconstitutional search and seizure was erroneously denied; and

2) That the evidence was not legally sufficient to establish his criminal agency.

The appellant Hall raised five contentions:

1) That his pretrial motion to suppress physical evidence as the fruit of an unconstitutional search and seizure

was erroneously denied (this contention is indistinguishable from the appellant Lee's contention No. 1);

2) That the suppression hearing judge erroneously denied his motion to suppress the physical evidence seized pursuant to a warrantless arrest made without probable cause;

3) That the evidence was not legally sufficient to establish his criminal agency (this contention is indistinguishable from the 'appellant Lee's contention No. 2);

4) That the evidence was not legally sufficient to support his conviction for carrying a handgun; and

5) That Judge Mitchell erroneously failed to state his reasons for imposing a sentence greatly in excess of that recommended by the sentencing guidelines.

On February 21, 1986, the appellant Hall's appeal was argued before a three-judge panel of this Court. On that same day, the appellant Lee's appeal was submitted on brief to the same three-judge panel.

Because of what this Court believed to be the critical significance of the search and seizure issue raised by both appellants and because of the unsettled state of the law with respect to that issue, we ordered, on May 22, 1986, that the two appeals be consolidated, be rebriefed, and be reargued before the entire Court sitting *en banc*. Believing that in a close or marginal search and seizure situation, the choice of the analytical framework might well be dispositive of the result, we ordered counsel for both sides, upon reargument, to address the following additional issue:

"Under prevailing Fourth Amendment law, is the appropriate analytical framework for deciding these cases that generally referred to as 'the centrality of the warrant requirement, with its limited list of jealously guarded and tightly circumscribed exceptions,' outlined in such cases as *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) and *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), or the approach now referred to as 'the general reasonableness

or balancing test,' outlined in such cases as *United States v. Place,* 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983); *United States v. Villamonte-Marquez,* 462 U.S. 579, 103 S.Ct. 2573, 77 L.Ed.2d 22 (1983) and *New Jersey v. T.L.O.,* 469 U.S. 325, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985)."

Reargument was heard by the entire Court on September 3, 1986. Our disposition of the additional issue raised upon reargument confirmed our suspicion, going into reargument, that the state of the law was unsettled. The judgments of the Circuit Court for Montgomery County were affirmed by an equally divided Court.

On September 5, 1986, the appellants filed a Motion for Reconsideration and Withdrawal of Mandate. They pointed out, quite properly, that in disposing of the search and seizure issue, we had neglected to state our dispositions of the other appellate contentions raised by them. On October 7, 1986, we granted the Motion for Reconsideration and recalled our mandate.

Upon this reconsideration, we reaffirm, by an equally divided Court, the decision of the suppression hearing judge not to suppress the physical evidence. With respect to the remaining appellate issues raised by both appellants, this Court is not divided.

After having raised the search and seizure issue generally in his first contention, the appellant Hall sought to raise it again, albeit in more specific form, in his second contention. He claimed:

"That the trial court erred in denying appellant's motion to suppress evidence seized pursuant to a warrantless arrest made without probable cause."

He presupposes that the warrantless search in issue must be justified as a search incident to lawful arrest. From that point of departure, he argues that the undergirding arrest was not lawful because it was made without probable cause.

We hold that our disposition of this issue is subsumed within our earlier decision, by an equally divided Court, to affirm the ruling of the suppression hearing judge not to suppress the evidence. The very framing of this sub-issue by the appellant Hall presupposes the framework of analysis generally referred to as "the centrality of the warrant requirement and its list of jealously guarded and tightly circumscribed exceptions," the exception in question being the search incident to a lawful arrest. Since we cannot agree to adopt that framework of analysis, we cannot indulge in subanalysis within that framework.

Although there is no agreement as to the Fourth Amendment merits, we unanimously hold that the procedural effect of the equal division of the Court is that the decision below not to suppress the evidence stands undisturbed. The very nature of the affirmance, by an equally divided Court, of the generalized suppression issue logically precludes our rendering holdings with respect to specific sub-issues that may or may not be included within the more general issue. The inability to say *why* the evidence shall not be suppressed does not prevent us from holding that *the evidence shall not be suppressed.*

■ Aside from the suppression issue, the only other contention raised by the appellant Lee is that the evidence was not legally sufficient to establish his criminal agency. One of the three remaining contentions raised by the appellant Hall is that the evidence was not legally sufficient to establish his criminal agency. The evidence against both appellants was so intertwined that we can profitably consider the two contentions together.

Even the appellants acknowledge the largely conditional nature of their arguments in this regard. The appellant Hall qualifies his argument on legal sufficiency in the following terms, "If this Court finds that the extrajudicial

identification of Appellant should be suppressed,[1] the evidence would thus be insufficient to prove criminal agency." The appellant Lee's argument on legal sufficiency largely acknowledges its contingent nature when he refers to "the only substantial link between Appellant and the offenses with which he is charged was the testimony connecting the bullet from Roland Ray to the gun seized prior to Appellant's arrest." There is not much left to a conditional argument when the condition precedent does not come to pass.

At approximately midnight on the night of August 12–13, 1984, Roland Ray was preparing to close his Corner Beer, Wine and Cheese Store in Gaithersburg, Maryland. Two young black males entered and began shopping, first for some California Cooler and then for some cigarette rolling papers. Shortly thereafter, both men moved menacingly up to Mr. Ray and demanded that he open the cash register. Each was wielding a handgun. As Mr. Ray began to press the necessary key to open the cash register, the man to his right suddenly exclaimed, "He is hitting an alarm." With that, the other assailant, standing directly in front of Mr. Ray, shot him at point blank range. As Mr. Ray fell to the floor behind the counter, he could see the two men pushing the keys to open the cash register, grabbing the money therefrom, and running out of the store.

Mr. Ray was in critical condition at the Suburban Hospital for approximately one month. A bullet was surgically removed from Mr. Ray's body on August 28.

Mr. Ray was not physically able to attend a lineup at the Montgomery County Detention Center until October 24. From a group of ten individuals, Mr. Ray tentatively picked out the appellant Hall, along with another misidentified individual. In the words of one of the witnessing officers, Mr. Ray stated that the two "looked as if he had seen them

---

1. Strangely, the appellant Hall has raised no appellate contention with respect to extrajudicial identification. We are thus in no position to find anything with respect to extrajudicial identification.

before, but he couldn't say that they were the ones that had robbed him." The appellant Lee was not picked out, even tentatively. (The appellant Lee, however, had grown a beard in the intervening two-and-one-half months.) As was established, however, at both the suppression hearing and the trial upon the merits, both appellants did meet the descriptions of his assailants given by Mr. Ray.

Testifying for the State, pursuant to a negotiated agreement, was one Kevin Anderson. Kevin Anderson placed both appellants in close proximity to the robbery scene at approximately the time of the robbery. He testified that on August 12, he had driven the appellant Lee to Frederick. While there, he was introduced by Lee to the appellant Hall. He agreed to give both appellants a ride back to the Washington area. On the trip back, Kevin Anderson decided to stop at a 7–11 Store in Gaithersburg, located very close to the Corner Beer, Wine, and Cheese Store. When he returned to his car from the 7–11 Store, he discovered that neither appellant was in the vehicle. He waited for "a good minute" for the two appellants to return. When they did so, they were bickering over who was to sit in the front seat. Kevin Anderson then drove both appellants on to downtown Washington.

Another State's witness was Allen Bufton, the manager of a sporting goods store in Georgetown. At some time between 10:30 and 11:30 a.m. the very next morning, August 13, three young black males entered his sporting goods store. One purchased a pair of basketball shoes, two pairs of socks, a Nike/Georgetown tee-shirt, a warm-up suit, and a pair of shorts. That individual paid $175 in cash for his purchases. A second of the three men purchased a very similar assortment of sports clothing and also paid cash. When the appellants were arrested, while playing basketball, on the afternoon of August 13, the appellant Hall had on his person $164 in cash and a receipt from Mr. Bufton's sporting goods store for purchases totalling $174.22.

Immediately prior to their arrests, both appellants had been observed handling a gym bag. In the gym bag was a .44 caliber handgun. A ballistics examination showed that the bullet surgically removed from Roland Ray's body had been fired from the handgun recovered from the gym bag.

Under all of the circumstances, it cannot be said that the evidence was not legally sufficient to permit the case against each appellant to go to the jury. *Williams v. State*, 5 Md.App. 450, 459, 247 A.2d 731 (1968); *Metz v. State*, 9 Md.App. 15, 23, 262 A.2d 331 (1970). This disposes of all contentions raised by the appellant Lee.

■ The appellant Hall raises an additional and more narrowly focused contention with respect to the legal sufficiency of the evidence. He claims that the evidence was not legally sufficient to support his conviction for carrying a handgun. He argues that even if the evidence shows that the gym bag containing the handgun was briefly in his possession as he and Lee moved around in the general vicinity of the basketball court on the afternoon of August 13, the evidence nonetheless showed that the gym bag (and, therefore, its contents) was primarily the personal property of Lee rather than Hall and that there was no showing that Hall had knowledge of the contents.

The flaw in Hall's argument is that he looks upon the events of the late afternoon of August 13 in a vacuum. The conduct of carrying the handgun may be restricted to the possession, exclusive or joint, on the afternoon of August 13, but the evidence bearing upon his knowledge is not limited to that narrow time frame. If, as we have held it was, the evidence was legally sufficient to permit findings that the appellant Hall participated with Lee in the armed robbery that occurred a bare 16 hours earlier, that the appellant Hall was still with his accomplice Lee the following morning when they both used some of the cash proceeds of the robbery to purchase sporting goods, and that one of the two handguns was still in their mutual posses-

sion as they remained together through the afternoon of August 13, then it follows from this totality of evidence that the jury could have reasonably inferred that the appellant Hall knew the gun was in the gym bag. The trial judge was not in error in letting the issue go to the jury. Under the circumstances, it is not even necessary to address the issue of whether knowledge or *scienter* is a required element of the crime of carrying a handgun.

■ The appellant Hall's final contention is that Judge Mitchell, in imposing a sentence of 73 years' incarceration, exceeded the recommendations of the sentencing guidelines and failed to state his reasons for so doing. There is no requirement of law either that a sentencing judge follow the sentencing guidelines or that the sentencing judge give his reasons for not doing so. As Chief Judge Murphy pointed out for the Court of Appeals, in *Teasley v. State,* 298 Md. 364, 370, 470 A.2d 337 (1984):

> "Appellate review of sentences is extremely limited in Maryland; only three grounds of review are recognized: (1) the sentence may not constitute cruel and unusual punishment or otherwise violate constitutional requirements; (2) the sentencing judge may not be motivated by ill-will, prejudice or other impermissible considerations; and (3) the sentence must be within the statutory limitations. *Logan v. State,* 289 Md. 460, 425 A.2d 632 (1981); *Kaylor v. State,* 285 Md. 66, 400 A.2d 419 (1979); *Clark v. State,* 284 Md. 260, 396 A.2d 243 (1979). Nothing in the law requires that Guidelines sentences or principles be applied."

*See also Teasley v. State,* 54 Md.App. 454, 455–456, 458 A.2d 93 (1983), wherein we pointed out:

> "The effort at sentencing reform represented by the so-called sentencing guidelines and being conducted on an experimental basis is a commendable one. Participation, however, by the trial judges is on a voluntary basis. Our approval of an experimental effort to reform the law does not enlarge our appellate jurisdiction. Whether, there-

fore, a trial judge scrupulously follows, outrageously flouts or clumsily misapplies the sentencing guidelines is simply none of our appellate business, unless, of course, such flouting or misapplying should coincidentally trigger one of our more limited and traditional reasons for reviewing a sentence."

This disposes of all contentions raised by the appellant Hall.

In the Motion for Reconsideration, which we have granted, both appellants raised an additional issue which merits comment. Apparently chagrined at the procedure of affirming the decision of a trial court by an equally divided appellate court, the appellants claim:

"Appellants respectfully assert that under the Constitution and the laws of the State of Maryland including but not limited to the final sentence of Md.Code (1974, 1982 Repl. Vol.), § 1–403(c) of the Courts and Judicial Proceedings Article, the resolution of these cases by this Court's order dated September 3, 1986, deprived Appellants of their right to appellate review of their convictions."

Section 1–403(c) deals with hearings *en banc* and provides:

"A hearing or rehearing before the court in banc may be ordered in any case by a majority of the incumbent judges of the court. Six judges of the court constitute a quorum of the court in banc. The concurrence of a majority of the incumbent judges of the entire court is necessary for decision of a case heard or reheard by the court in banc."

The thrust of the appellants' complaint is that they were denied appellate review and were denied a decision. Quite to the contrary, they have received the benefit of extensive and, indeed, extraordinary appellate review. With respect to a decision, they fail to appreciate that a conscious non-decision is a form, albeit a rare one, of deciding.

■ The action of a duly constituted trial court is presumptively correct. The appellant, civil or criminal and regardless of his posture below, is always the moving party

attempting to persuade the appellate court that the trial court committed error. The burden of proof is, therefore, allocated to the party claiming error to prove error. When the moving party fails to persuade a majority of the reviewing court that the trial court's decision was in error, the appellant has by definition failed to sustain his burden of persuasion. The presumptive validity of the decision below stands unrebutted.

Although instances of the phenomenon are relatively rare, the undergirding logic was well analyzed by the Supreme Court in the case of *Durant v. Essex Co.,* 74 U.S. (7 Wall.) 107, 112, 19 L.Ed. 154 (1868):

> "In cases of appeal or writ of error in this court, the appellant or plaintiff in error is always the moving party. It is affirmative action which he asks. The question presented is, shall the judgment, or decree, be reversed? If the judges are divided, the reversal cannot be had, for no order can be made. The judgment of the court below, therefore, stands in full force. It is indeed, the settled practice in such case to enter a judgment of affirmance; but this is only the most convenient mode of expressing the fact that the cause is finally disposed of in conformity with the action of the court below, and that that court can proceed to enforce its judgment. The legal effect would be the same if the appeal, or writ of error, were dismissed."

*See also Oklahoma v. Castleberry,* 471 U.S. 146, 105 S.Ct. 1859, 85 L.Ed.2d 112 (1985).

This is not only the practice in the Supreme Court, *Hertz v. Woodman,* 218 U.S. 205, 30 S.Ct. 621, 54 L.Ed. 1001 (1910), but is accepted common law practice. *Territory v. Gaines,* 11 Ariz. 270, 93 P. 281 (1908); *McCurry v. McCurry,* 223 Ga. 334, 155 S.E.2d 378 (1967); *Buroker v. Brown,* 241 Ind. 421, 172 N.E.2d 849 (1961); *First Nat'l Bank v. Frank,* 203 Iowa 364, 212 N.W. 705 (1927); *Kangas v. New York Life Ins. Co.,* 223 Mich. 238, 193 N.W. 867 (1923); *State v. Smith,* 422 S.W.2d 50 (Mo.1967); *In re Willis,* 286 N.C. 207, 209 S.E.2d 457 (1974); *Humphreys v. State,* 512

P.2d 197 (Okla.Crim.App.1973); *Rowley v. Hager*, 63 Or. 246, 127 P. 36 (1912); *Thomas v. City of Ft. Pierre*, 59 S.D. 519, 241 N.W. 327 (1932); *Frank v. City of Cody*, 572 P.2d 1106 (Wyo.1977). Florida and West Virginia follow the same procedure, not as a matter of common law but by virtue of their state constitutions. *State v. City of Miami Beach*, 156 Fla. 546, 23 So.2d 720 (1945); *Owens-Illinois Glass Co. v. Battle*, 151 W.Va. 655, 154 S.E.2d 854 (1967). Colorado follows the same procedure as a matter of statute law. *People ex rel. Walker v. Stapleton*, 79 Colo. 629, 247 P. 1062 (1926). Discussions of this time-honored procedure may be found in Laurence. *A Very Short Article on the Precedential Value of the Opinions From an Equally Divided Court*, 37 Ark.L.Rev. 418 (1983); Comment, *Stare Decisis—Binding Effect of Previous Decision Where Court Equally Divided—Distinction Between Decision and Ratio Decidendi*, XXXIII Can.Bar Rev. 612 (1955); Note, *Decisions by Equally Divided Courts as Precedents*, 70 Law Q.Rev. 318 (1954).

■ When the judgment of a trial court is affirmed by an equally divided appellate court, a decision is thereby made. The decision is that the trial court's judgment will not be reversed because the appellant has failed to persuade a majority of the reviewing court that it merits reversal. There is no lack of decisive impact on the case at hand. What is lacking is an agreed *ratio decidendi* which can serve as binding precedential authority for future decisions. The deprivation, if any, is not worked upon the present litigants but only upon the outside world looking for precedential guidance. In commenting upon its own earlier affirmance by an equally divided court in the case of *Biggers v. Tennessee*, 390 U.S. 404, 88 S.Ct. 979, 19 L.Ed.2d 1267 (1968), the Supreme Court, in *Neil v. Biggers*, 409 U.S. 188, 191–192, 93 S.Ct. 375, 34 L.Ed.2d 401, 407 (1972), discussed the procedural phenomenon and its legal significance:

"In this light, we review our cases explicating the disposition 'affirmed by an equally divided Court.' On

what was apparently the first occasion of an equal division, *The Antelope*, 10 Wheat. 66, 6 L.Ed. 268 (1825), the Court simply affirmed on the point of division without much discussion. *Id.*, at 126–127, 6 L.Ed. 268. Faced with a similar division during the next Term, the Court again affirmed, Chief Justice Marshall explaining that 'the principles of law which have been argued, cannot be settled; but the judgment is affirmed, the court being divided in opinion upon it.' *Etting v. Bank of the United States*, 11 Wheat. 59, 78, 6 L.Ed. 419 (1826)."

On all issues other than the suppression of evidence, the appellants have our decisions and the reasons for those decisions. On the suppression issue, they have our decision with no reasons. Reasons are unnecessary because the decision is without force as precedent. As was explained by four justices of the Supreme Court, in *Ohio ex rel. Eaton v. Price*, 364 U.S. 263, 263–264, 80 S.Ct. 1463, 1464, 4 L.Ed.2d 1708, 1709 (1960):

"The judgment of the Ohio Supreme Court in this case is being affirmed *ex necessitate*, by an equally divided Court. Four of the Justices participating are of opinion that the judgment should be affirmed, while we four think it should be reversed. Accordingly, *the judgment is without force as precedent. The Antelope* (US) 10 Wheat. 66, 126, 6 L.Ed. 268, 282; *Etting v. Bank of United States* (US) 11 Wheat. 59, 78, 6 L.Ed. 419, 423. In such circumstances, as those leading cases indicate, *the usual practice is not to express any opinion, for such an expression is unnecessary where nothing is settled.*" (Emphasis supplied). (Opinion by Brennan, J., joined by Chief Justice Warren, Justice Black, and Justice Douglas).

Notwithstanding a reargument *en banc* which was both enlightening and stimulating, we conclude, *ex necessitate*, with the words of Chief Justice Marshall in *Etting v. Bank of the United States, supra*, at 11 Wheat. 78, "The principles of law which have been argued cannot be settled; but the judgment is affirmed."

JUDGMENTS AFFIRMED; COSTS TO BE PAID BY APPELLANTS.