*1092 OPINION OF THE COURT
Albert M. Rosenblatt, J.
The defendant moves for dismissal of the indictment, contending that section 205.17 of the Penal Law is unconstitutionally violative of his equal protection guarantees. He stands charged under that section, which defines conduct proscribed as a class E felony, for allegedly absconding from a temporary release program at Fishkill Correctional Facility.
The constitutional attack is based on the defendant’s claim that he was charged under the felony statute (Penal Law, § 205.17) while sections 205.16 and 205.18 of the Penal Law (the three statutes forming a trilogy of release program absconding crimes) involve misdemeanor classifications. He argues that the State may not constitutionally punish an individual under a felony statute, while others, for comparable acts of absconding, are punishable only as misdemeanants.
The statutes, however, contain distinctions, which, the People assert, allow rational differentiation and punishment.
The three statutes read as follows:
"§ 205.16 Absconding from temporary release in the second degree.
"A person is guilty of absconding from temporary release in the second degree when having been released from confinement in a correctional institution to participate in a program of work release, he intentionally fails to return to the institution of his confinement at or before the time prescribed for his return.
"Absconding from temporary release in the second degree is a class A misdemeanor.
"§ 205.17 Absconding from temporary release in the first degree.
"A person is guilty of absconding from temporary release in the first degree when having been released from confinement in a correctional institution under the jurisdiction of the state department of correctional services to participate in a program of temporary release, he intentionally fails to return to the institution of his confinement at or before the time prescribed for his return.
"Absconding from temporary release in the first degree is a class E felony.
"§ 205.18 Absconding from a furlough program.
*1093 "A person is guilty of absconding from a furlough program when, having been released from confinement in an institution under the jurisdiction of the commissioner of correction in a city having a population of one million or more or of a county which elects to have this article apply thereto to participate in a furlough program, he intentionally fails to return to the institution of his confinement at or before the time prescribed for his return.
"Absconding from a furlough program is a class A misdemeanor.”
It may be seen that the chief distinction, and, hence, the ground for classificatory disparity, lies in the difference between those who are State prisoners and those who are not. The differences between work release, temporary release, and furlough, pale in importance and constitutional relevancy when the chief distinguishing feature is considered. The State has elected to assign higher culpability to those who abscond from confinement in correctional institutions under the jurisdiction of the State Department of Correctional Services, as opposed to those in local facilities.
To begin with, any distinction in treatment must abide the test of equal protection, for it has been recognized from our early cases, to the present, that a State is imperatively bound to impose equal burdens and obligations on its citizens. (Slaughter-House Cases, 16 Wall [83 US] 36; Missouri v Lewis, 101 US 22; Califano v Goldfarb, 430 US 199; Wilkinson, The Supreme Court, the Equal Protection Clause, and the Three Faces of Constitutional Equality, 61 Va L Rev 945.)
But while arbitrary or fatuous classifications are abjured, a State may constitutionally grade criminal conduct by employing rational standards (Dobbert v Florida, 432 US 282; McDonald v Massachusetts, 180 US 311).
The history of the release statutes and their developments do not support the defendant’s claim of unequal protection born of legislative inadvertence or an unfounded preference given one class over another. All of the programs grew out of the laudable concern for prisoner rehabilitation, and the view that those who return to civil life be graduated into, rather than thrust upon the community, bereft of the appropriate skills and attitudes. (See, generally, Governor’s Memorandum, NY Legis Ann, 1969, pp 552-553, approving L 1969, ch 472; see, also, L 1969, ch 678.) From the outset, the Legislature distinguished between State prisoners and others, *1094 in enacting these statutes. The later améndments preserve that distinction, and with it, the grounds for rational categorization.[2]
The presence of this additional element — one’s confinement in a State institution — is a legislative recognition that, generally speaking, State facilities maintain the more serious offenders, whose unauthorized departure from confinement may be said to pose a greater risk to the community. There is nothing irrational about that scheme, nor is its classification vulnerable to the claim that in certain cases, the same class D or class E felon would be treated differently, depending on whether he was sentenced to (and absconded from) a State or local facility release program.
The aggravating element may be said to give the prosecution the choice between the felony or misdemeanor accusation, but that characterization is not descriptive of the precise state of affairs. In a prosecution where, for example, there is a legal case of armed robbery, the prosecution, to be sure, may proceed instead under a drastically milder charge of petit larceny. But the occasion for such a choice does not begin to establish that an otherwise valid armed robbery indictment is the product of an unconstitutional or arbitrary election. It is the presence of facts which spell out the aggravating feature which sustains the indictment (People v Eboli, 34 NY2d 281; People v Lubow, 29 NY2d 58), thus giving the prosecution a rational choice supported by the added component which elevates one crime above the other (People v Vicaretti, 54 AD2d 236; People v Simms, 58 AD2d 720; People v Discala, 58 AD2d 302).
There has been no reported decision which discusses the constitutional issues involved under section 205.17. In People v Scanelli (49 AD2d 648) the Appellate Division, without *1095 elaboration, rejected the contention that the statute was violative of equal protection. In Scanelli’s brief on appeal he argued that having been charged with felonious absconding from a State facility, he was denied equal protection because a counterpart in a county jail or city (of over a million population) facility may be charged with only misdemeanor absconding, even though they both be incarcerated for the same grade felony, with one being sentenced to State prison, and the other to a local facility under the alternative definite sentence provisions of subdivision 4 of section 70.00 of the Penal Law.
Without deciding whether the equal protection argument would be available to the defendant were he charged with absconding while serving under a conviction which could have resulted in definite (jail) sentence rather than an indeterminate (State prison) sentence, it is enough to say that the defendant was serving a sentence under a crime which did not allow any but a State sentence, and was therefore not a member of a class of persons serving definite sentences for class D or E felonies. (People v Scafuri, 87 Misc 2d 797, 799, affd 59 AD2d 788; Avery v Georgia, 345 US 559.)
The court holds that on the strength of Eboli, Lubow, Scanelli, and for other reasons given, there is no basis for any finding that the defendant has been denied equal protection of the laws.
Accordingly, the motion is denied.

. Any attempt to differentiate section 205.16 from section 205.17 of the Penal Law on the ground that section 205.16 deals with "work” release, while section 205.17 deals with "temporary” release, does not give rise to a distinction which may be characterized as one of unequal protection. The Legislature (L 1972, ch 339) did reconcile the statutes by amending section 205.16, changing the words "work release” to "temporary release,” but the amendment was effective only through June 20, 1974. Whether their failure to continue the amendment beyond that date and through the present was a matter of legislative will or legislative oversight is not controlling, in view of this court’s holding that the chief distinction between the statutes is that one relates to absconding from a State institution and the other does not. See, also, subdivision 9 of section 851 of the Correction Law, which defined "[temporary release program” to include both work release programs and furloughs.