Appellant, Billy Wayne Johnson, was charged, by five separate indictments, for the offenses of rape in the first degree, kidnapping in the first degree, robbery in the first degree, rape in the first degree, and kidnapping in the first degree. These indictments arose from two separate incidents: one in which appellant allegedly kidnapped, raped, and robbed Donna Sue Hodge, and the other in which appellant allegedly kidnapped and raped Jennifer Kay Mitchell. These indictments were consolidated for trial and on September 17, 1984, a jury returned verdicts finding appellant guilty as charged in each of the five indictments. The trial court subsequently sentenced appellant to life imprisonment without the possibility of parole in each of the five cases, to run concurrently with each other. *Page 1193 
Donna Sue Hodge testified that on December 6, 1982, she was returning to her vehicle, which was parked outside a convenience store in Decatur, Alabama. Hodge unlocked her vehicle, at which time a man wearing a ski mask pointed a pistol at her face, pushed her into the vehicle, and then forced his way into the vehicle. The assailant stated he wanted to borrow her vehicle and would let her out in a short while. As the assailant drove her vehicle, he took a package of cigarettes from her and smoked a cigarette. Subsequently, a latent fingerprint obtained from the cigarette package was identified as appellant's.
The assailant drove Hodge to a deserted area and forced her to have sexual intercourse with him. The assailant never removed his mask during these events. Hodge asked the assailant if he was going to kill her, to which he responded, "No." He then allowed her to put her clothes back on. As the assailant was driving back toward the point of the abduction, he noticed the vehicle was low on fuel and asked Hodge if she had any money. Hodge had fifteen dollars, which the assailant took and used to purchase an unspecified amount of gasoline. Hodge lay on the back seat of the vehicle, as if sleeping, with her head turned toward the seat, while the assailant removed his mask and purchased gasoline. The assailant drove Hodge back into Decatur, where she was released without further harm. Hodge testified that she never saw the assailant's face during the course of these events.
Jennifer Kay Mitchell testified that on December 16, 1982, she was twenty-one years old and seven months pregnant. Around 10:00 p.m., she left her residence to obtain a magazine from a car parked outside her apartment. As she was unlocking the driver's door of the vehicle, a man wearing a ski mask pushed her against the car and hit her with his right arm. The assailant pointed a gun at her face and threatened to kill her if she made a noise. Then, the assailant took Mitchell by the arm and forced her to run down an alley to a "shack," where he took her keys, tied her hands together, gagged her with a handkerchief, and placed over her face the ski mask which he had been wearing. The assailant then escorted Mitchell across the street to a vacant house, where he forced her to have sexual intercourse with him.
Thereafter, the assailant questioned Mitchell about any occupants of her apartment and whether money and guns were kept there. The assailant then left the room, but he returned occasionally to check on her. Eventually, he turned her head toward the back of the couch on which she was lying, took the ski mask off her face, and told her he would kill her if she tried to look at him or tried to get away.
Mitchell remained tied up on the couch for approximately one hour, during which time she did not hear the assailant return to the room. Mitchell then removed the ropes from her ankles and, with her hands still tied together and the gag around her neck, went directly home. The police were present when she arrived. Mitchell never got a good look at her assailant and was unable to subsequently identify anyone as being the person who raped her.
Oddie Gary Mitchell, formerly married to Jennifer Kay Mitchell, was a student at the University of Alabama, and was in Decatur, visiting his former wife on the night of December 16, 1982. Mr. Mitchell had fallen asleep on the couch prior to Jennifer Mitchell going to the vehicle to obtain a magazine. Mr. Mitchell was awakened by a telephone call, which was received by Jennifer Mitchell's roommate, Carol Naves. As a result of this telephone call, the police were contacted.
Carol Naves testified that she returned to her apartment at approximately 10:55 p.m. on December 16, 1982. Oddie Mitchell was asleep on the couch and no one else was present at that time, other than Naves's daughter, who had arrived with Naves. At approximately 11:10 p.m., she received a telephone call from an unidentified male, who said, "If you want to see Jennifer alive again, you will do exactly as I say." The caller told Naves to walk toward "the motel." Naves responded that she did not know where "the motel" was located. The caller then told her to "go *Page 1194 
outside and walk down the alley toward J. and J. School Supplies." The caller then asked if she had any money, to which she responded, "No." Naves asked the caller what she was to do, and she was told to walk down the alley and introduce herself to the first person that came out. He further said he would come and get her. Naves told the caller that she could not leave because she had a child in the house. The caller responded that she had three minutes, to come alone, and not wake the male sleeping on the couch. Naves informed Mr. Mitchell of the call, and they decided to call the police. Jennifer Mitchell arrived at the house around midnight.
Lieutenant Ed Taylor of the Decatur Police Department testified that appellant was arrested on December 22, 1982. Appellant was properly informed of his Miranda rights, and confessions to the Hodge and Mitchell cases were obtained. The confessions contained a detailed account of the facts outlined above.
The defense presented testimony from various members of appellant's family, which established the deplorable condition of appellant's youth. This evidence established that appellant's mother sexually and physically abused him as a child.
Dr. Mark William Petterson, a psychiatrist employed by the North Alabama Regional Hospital, testified that he interviewed appellant on two occasions, totaling two hours and fifteen minutes, during September 1984. Petterson was of the opinion that appellant was fully competent to stand trial. Petterson was, further, of the opinion that appellant suffered from a "borderline character disorder." Based on interviews with appellant, Petterson concluded that if appellant did in fact commit these crimes, then "he did not at the time of the alleged events knowingly — know the wrongfulness of his acts or could not conform his conduct to the requirements of the law."
Petterson's opinion was in conflict with the portion of the opinion reached by experts at the Taylor Hardin Secure Medical Facility, which concluded that "during the time period of the alleged offenses, it appears that appellant was not suffering from any abnormal behavioral condition which could be reasonably construed as a mental disease or defect which would compromise his ability to appreciate the criminality of his behavior or to conform his behavior to the requirements of law. . . ."
Closing arguments were not reported and are not part of the transcript on appeal. At the conclusion of closing arguments, outside the presence of the jury, the court stated:
 "Gentlemen, we have had a charge conference already, at least I advised defense counsel in writing what charges I was going to give and what ones I was going to refuse, and that was done before the final arguments. I want to interrupt at this time to give everybody an opportunity to take whatever position they want to take in the morning before I charge the jury. I didn't note completely what both attorneys said in regard to the defense in their final arguments, but I specifically wrote down this statement from Mr. Lavender [defense counsel], 'I am not asking you to find the defendant not guilty of these five cases. I wouldn't do that. I am asking you to find him not guilty by reason of insanity.' That is a direct quote, and that was repeated twice more in substance, although not in the exact words.
 "Now, the Court's position is that admissions of counsel are binding on the defendant. That being the case, I propose to charge the jury tomorrow on the defense of insanity, and that is all.
 "Now, if you perceive some impropriety in that sort of thing and so forth, then you should be prepared in the morning to give me authority to that effect so that I can see that is the case, otherwise that is the way I propose to proceed. . . ."
The following morning, prior to the court's oral charge, defense counsel orally requested that the jury be instructed on the crimes of rape, kidnapping, and robbery, and also submitted written instructions. The trial court refused to give these instructions, relying on the premise that defense counsel's statements in closing arguments were *Page 1195 
an admission of guilt by the defendant, which dispensed with the necessity of the jury reaching a verdict on the charged offenses. Defense counsel, while not denying he made the quoted remarks, contended that such remarks were not binding on his client as an admission of guilt. The court proceeded to instruct the jury solely on the question of whether or not appellant was not guilty by reason of insanity, and withdrew from the jury's consideration the question of guilt of the offenses charged under the not guilty plea.
Appellant contends that the court erred in relying on the statements made in closing arguments as an admission of guilt binding against him or as a withdrawal or abandonment of his plea of not guilty. We agree.
It has been generally recognized "that an admission of fact made by counsel for accused at the trial and in open court may be considered by the jury, and this rule applies tounequivocal conduct of counsel from which the jury can properly and reasonably consider that the fact was conceded. . . ." 22A C.J.S. Criminal Law § 739 (1961) (emphasis added). See generally Ala. Digest, CriminalLaw Key No. 410. In Donahay v. State, 287 Ala. 716,718-19, 255 So.2d 599, 601, cert. denied, 287 Ala. 730,255 So.2d 602 (1971), the court noted, as follows:
 "As pointed out in Wigmore on Evidence, Third Edition, 1940, at § 1058, the true admission is a formal act, done in the course of judicial proceedings, which waives or dispenses with the production of evidence, by conceding for the purposes of litigation that the proposition of fact alleged by the opponent is true; it concerns a method of escaping from the necessity of offering any evidence at all, and is a waiver relieving the opposing party from the need of any evidence, and is conclusive in the sense that it formally waives all right to deny, for the purposes of trial; it removes the proposition in question from the field of disputed issues." (Emphasis added.)
Donahay, thus, makes clear the proposition that counsel may formally admit certain matters and, thereby, dispense with the production of evidence, to the admitted issue, at trial. Conceivably, under facts such as those presented here, defense counsel could admit to a defendant's guilt and urge the jury to consider only the insanity issue. However, here the statements of defense counsel do not constitute distinct, formal, and unequivocal acts which rise to the level of an admission.
In Wilkey v. State, 238 Ala. 595, 597, 192 So. 588,589 (1939), the court was called upon to determine whether certain remarks made by defense counsel in openingstatements constituted admissions upon which a directed verdict could be based. The court concluded that counsel's actions did not disclose "the intention . . . to make an admission which would be accepted by the court as conclusive of his defense to preclude the introduction of evidence."Id. at 602, 192 So. at 593. In reaching this conclusion, the court noted, quoting Temple v. CottonTransfer Co., 126 Neb. 287, 296, 253 N.W. 349, 350 (1934):
 " 'Admissions by counsel, made in good faith at the trial of an action in open court for the purpose of dispensing with testimony, bind their clients. * * * But such admissions, in order to bind a client, must be distinct and formal, and made for the express purpose of dispensing with formal proof of a fact at the trial.' "
238 Ala. at 599, 192 So. at 591.
The requirement that an admission of counsel be distinct and formal before it becomes binding on his client was also recognized in Cook v. Morton, 254 Ala. 112, 116,47 So.2d 471, 475 (1950), which involved statements made in argument by counsel during the trial of a contested will. The court held, as follows:
 "The statement of counsel made in argument on the contest of the will on the ground of undue influence was not a distinct, formal solemn admission made for the express purpose of relieving Mollie Cook from establishing the correct interpretation of the will in subsequent trial such as the case at bar." (Emphasis added.) *Page 1196 
Id. This reasoning has been further elaborated on in 22A C.J.S. Criminal Law § 739, wherein it is stated, as follows:
 "It has been held that an admission of fact by counsel for accused, to be admissible, must be voluntarily and purposely made to avoid necessity of proof, or it must be distinct and formal and made for the express purpose of dispensing with proof of a fact on the trial, and that an admission made by counsel in argument does not take the place of testimony, is not sufficient to justify the trial court in assuming that accused admitted such matter, and a conviction may not be based thereon."
In the instant case, we have reviewed the entire record of appellant's trial. Appellant entered pleas of not guiltyand not guilty by reason of insanity. A plea of not guilty by reason of insanity does not preclude the usual pleas to the general issue. Ala. Code (1975), § 15-16-1. A defendant may assert inconsistent pleas in a criminal prosecution. Richardson v. City of Tuscaloosa,22 Ala. App. 604, 118 So. 496 (1928); Davis v. State,20 Ala. App. 131, 101 So. 171 (1924), aff'd, 213 Ala. 541,105 So. 677 (1925). At no time during the course of the trial did the defense attempt to abandon the "not guilty" plea. The defense conducted probing cross-examination of State's witnesses and attempted to discredit the confessions obtained from appellant by the police authorities. During the direct examination of Dr. Petterson, the defense attorneys were very careful to phrase their hypothetical questions in such a way as to not elicit a response which would admit appellant's guilt. The questions to Dr. Petterson were all qualified by such phrases as, the following: "If Billy Wayne Johnson had in fact committed these crimes. . ."; "Assuming that Mr. Johnson committed these crimes. . ."; and "If he committed these acts. . .". It is apparent to us, from the record, that at no time during the course of the trial did defense counsel appear to abandon the not guilty plea.
We find, from the record, that upon being informed of the trial court's decision to forgo instructions to the jury on the elements of the offenses, a timely and proper objection was interposed and the issue was thereby preserved for our review.
We hold that the record before us does not disclose unequivocal conduct of counsel which evidences a distinct and formal admission made for the express purpose of dispensing with the formal determination of guilt by the jury at appellant's trial. The issue of guilt should have been submitted to the jury for their consideration, along with appellant's insanity defense.
Based on the foregoing, this case is due to be, and it is hereby, reversed and remanded.
REVERSED AND REMANDED.
All Judges concur.