539 So.2d 343 (1987)
Donnie WEBB
v.
STATE.
3 Div. 329.
Court of Criminal Appeals of Alabama.
April 28, 1987.
Rehearing Denied June 9, 1987.
Certiorari Quashed March 4, 1988.
On Return to Remand December 30, 1988.
*345 M. Wayne Sabel of Argo, Enslen, Holloway & Sabel, Montgomery, for appellant.
Charles A. Graddick, Atty. Gen., and Jean Williams Brown, Asst. Atty. Gen., for appellee.
Alabama Supreme Court 86-1208.
BOWEN, Presiding Judge.
Donnie Webb was convicted for escape in the first degree and was sentenced to life imprisonment as a habitual felony offender. Eleven issues are raised on this appeal of that conviction.

I
Webb argues that the statutory scheme under which he was indicted and convicted "violates the constitutional assurances of proportionate penalties, due process and equal protection of the law" because it "creates an impermissible classification of offenders and is unduly vague and ambiguous." This is an issue of first impression in this State.
In Alexander v. State, 475 So.2d 625 (Ala.Cr.App.1984), reversed on other grounds, Ex parte Alexander, 475 So.2d 628 (Ala.1985), this court held that a state inmate who fails to return from work release is guilty of the felony of escape in the first degree under § 13A-10-31, Code of Alabama (1975). However, a county inmate or a state inmate in county custody who fails to return from work release is guilty only of a misdemeanor under § 14-8-42. Alabama's new criminal code repealed § 14-8-8, which made it a misdemeanor for a state inmate, not in county custody, to fail to return from work release. Alexander, 475 So.2d at 627; Allen v. State, 481 So.2d 418 (Ala.Cr.App.1985); Miller v. State, 349 So.2d 129, 131 (Ala.Cr. App.1977). Webb correctly argues that if he had been a state inmate in county custody or a county inmate and had failed to return from work release he would have been guilty of only a misdemeanor.
"Generally, any law with respect to the punishment to be given must operate equally on every citizen or inhabitant of the state, and a statute is void as a denial of equal protection of the laws which prescribes a different punishment or different degrees of punishment for the same acts committed under the same circumstances by persons in like situations." Opinion of the Justices No. 293, 410 So.2d 60, 61 (Ala. 1982). "The general rule is that `[e]qual protection of the laws is not denied by a statute prescribing the punishment to be inflicted on a person convicted of crime, unless it prescribes different punishments for the same acts committed under the same circumstances by persons in like situations.'" State v. Spurlock, 393 So.2d 1052, 1057 (Ala.Cr.App.1981). However,
"[t]he Equal Protection Clause does not mean that a state may not draw lines that treat one class of individuals differently from the others. The test is whether the difference in treatment is an invidious discrimination. ... Classification of subjects in a statute is not arbitrary and invalid if based on some difference which bears a reasonable and just relation to the attempted classification." Spurlock, 393 So.2d at 1056. (Citation omitted.)
Our review convinces us that the different punishments established for escape from a state work release facility and escape from a county work release center are based on a reasonable classification *346 scheme, further a proper governmental purpose, and are rationally related to that purpose.
Rejecting a similar equal protection argument in In re Sims, 117 Cal.App.3d 309, 172 Cal.Rptr. 608 (1981), the California Court of Appeals observed:
"The concept of equal protection of the laws compels recognition of the proposition that persons similarly situated receive similar treatment.... It is the prerogative of the Legislature to recognize degrees of culpability and to penalize accordingly ..., which is what the Legislature has done here, where it has made only crimes committed while confined in or subject to reimprisonment for escape from state prison subject to full consecutive terms." 117 Cal.App.3d at 314, 172 Cal.Rptr. 608 (citations omitted) (emphasis in original).
In People v. Agron, 91 Misc.2d 1091, 399 N.Y.S.2d 383 (N.Y.Co.Ct.1977), the court found no denial of equal protection in a New York statute which penalized the escape of a state prisoner from a state temporary release center as a felony, while another statutory provision punished the escape of a prisoner from a local temporary release center as a misdemeanor:
"From the outset, the legislature distinguished between state prisoners and others, in enacting these statutes....
"The presence of this additional elementone's confinement in a state institutionis a legislative recognition that, generally speaking, state facilities maintain the more serious offenders, whose unauthorized departure from confinement may be said to pose a greater risk to the community. There is nothing irrational about that scheme, nor is its classification vulnerable to the claim that in certain cases, the same class D or class E felons would be treated differently, depending on whether he was sentenced to (and absconded from) a state or local facility release program." 399 N.Y.S.2d at 385.
In finding no equal protection violation, both the New York and the California courts recognized the fact that escapees from state facilities and escapees from local facilities are not "similarly situated" because normally the state convict has, prior to his escape, been found guilty of a more serious underlying offense. "The law has long recognized a relation between punishment for breach of prison and the offense for which the prisoner is held, and it has more severely punished prison breaking by one undergoing imprisonment for grievous crime than if done by one held for a lesser offense." Pennsylvania ex rel. Sullivan v. Ashe, 302 U.S. 51, 53, 58 S.Ct. 59, 60, 82 L.Ed. 43, 45 (1937). Thus, insofar as escape statutes impose different punishments based upon the classification of the convicts' prior offenses, they do not deny equal protection of the laws. Ashe, supra; Alex v. State, 484 P.2d 677 (Alaska 1971); People v. McKnight, 626 P.2d 678 (Colo. 1981); Clark v. State, 284 Md. 260, 396 A.2d 243, cert. denied, 444 U.S. 858, 100 S.Ct. 119, 62 L.Ed.2d 77 (1979).
"[A] classification made by a Legislature is presumed to be reasonable in the absence of clear and convincing indications to the contrary, and the person who assails it has the burden of showing that it does not rest upon any reasonable basis, but is essentially arbitrary." Clark v. State, 396 A.2d at 247. The Alabama legislature has classified "county inmates" and "state inmates" for purposes of work release as follows:
"(1) COUNTY INMATE: A person convicted of a crime and sentenced to a term of confinement of one year's duration or less.
"STATE INMATE: A person convicted of a crime and sentenced to a term of confinement of more than one year's duration."
Ala. Code (1975), § 14-8-30. Compare Ala. Code §§ 13A-1-2(3) (offense punishable by less than one year's imprisonment is a misdemeanor) and 13A-1-2(4) (offense punished by more than one year's imprisonment is a felony). By definition, therefore, a county inmate is a convicted misdemeanant and a state inmate, regardless of the location of his work release facility, is a convicted felon.
*347 Although the Alabama legislature has not defined "state inmates in county custody," it has authorized the Board of Corrections to promulgate rules concerning which state inmates may participate in county work release programs, Ala. Code (1975), § 14-8-31(c), and it has provided that only those state inmates "approved by" the Board of Corrections may be held in county custody. See Ala. Code (1975), § 14-8-33(b).
In the absence of any evidence to the contrary, we must assume that the Board of Corrections, to whom the legislature properly delegated the authority to classify "state inmates in county custody," transfers only low risk, non-dangerous felons to county custody. "When the classification in ... a law [assailed on equal protection grounds] is called in question, if any state of facts reasonably can be conceived that would sustain it, the existence of that state of facts at the time the law was enacted must be assumed." Lindsley v. Natural Carbonic Gas Co., 220 U.S. 61, 78-79, 31 S.Ct. 337, 340, 55 L.Ed. 369 (1911). Assuming, then, that the Board of Corrections exercises its discretion to transfer to county custody only those state inmates who present the least threat to society, the differences in punishment for the crimes of escape from a work release center rest on a reasonable basis and cannot be said to be purely arbitrary. Lindsley, id., at 79, 31 S.Ct. at 340; Spurlock, 393 So.2d at 1056. We find nothing arbitrary in the legislature's determination that a dangerous felon who fails to return to his work release center is guilty of a felony, while a misdemeanant or a non-dangerous felon who absconds from work release is guilty only of a misdemeanor. As the Colorado Supreme Court observed:
"We believe that there are a number of rational considerations which justify the classification scheme of our escape statute. These considerations include the reasonable belief on the part of the legislature that persons convicted of more grievous crimes present a greater threat to society requiring that a greater effort be made to deter their escape, and that persons convicted of more grievous crimes are generally sentenced to longer prison terms, increasing their motive to escape and requiring greater penalties to help deter such escapes."
People v. McKnight, 626 P.2d at 684 (Colo. 1981). To the extent that the Board of Corrections transfers state inmates to county facilities in order to relieve overcrowding at state facilities, there is a proper exercise of delegated authority and no denial of equal protection. See Clark v. State, 284 Md. 260, 396 A.2d 243, cert. denied, 444 U.S. 858, 100 S.Ct. 119, 62 L.Ed.2d 77 (1979). The legislature may, without violating the equal protection clause, provide a special punishment for a special class of offenders. Fowler v. State, 440 So.2d 1195, 1198 (Ala.Cr.App. 1983); Spurlock v. State, supra, 393 So.2d at 1056. Section 13A-10-31, as it applies to State work release inmates, does not deny equal protection of the laws.

II
Defendant's requested jury charges numbered 1 through 6 and number 21, all dealing with the definition of "custody," were properly refused based on the holding of Alexander v. State, supra. An inmate's failure to return from work release to his place of confinement constitutes an "escape from custody" within the meaning of § 13A-10-31.

III
Defendant's requested jury charges numbered 7 through 10, concerning the defense of entrapment, were properly refused because they were unsupported by the evidence, abstract, and misleading. Even if we assume that defendant was induced by his work supervisor not to return to his place of employment, there is absolutely no evidence that he was incited or induced not to return to his place of confinement.

IV
Defendant's requested charge number 12, instructing the jury that "the law presumes that the defendant has testified truthfully," was correctly refused because *348 it states an incorrect principle of law. Murphy v. State, 22 Ala.App. 163, 113 So. 623 (1927) (overruling Crisp v. State, 21 Ala.App. 449, 109 So. 282 (1926)):
"The law raises no presumption either one way or the other as to the truth of the statements made by witnesses while testifying in a case. The credibility of parol testimony is a question of fact for the trying body to determine, and any instruction from the trial judge, by which such a question is put to the jury as a matter of law, is an infringement by the court of the peculiar province of the jury." 22 Ala.App. at 164, 113 So. at 623.

V
"The double jeopardy provision of the Fifth Amendment is not violated because a prisoner is subjected to administrative punishment (either reclassification or loss of good time) by prison authorities for violating prison regulations and is also prosecuted in a criminal action based upon the same facts." Jenkins v. State, 367 So.2d 587, 589 (Ala.Cr.App.1978), cert. denied, Ex parte Jenkins, 367 So.2d 590 (Ala.1979).
See also, Artrip v. State, 41 Ala.App. 492, 493-94, 136 So.2d 574, 575 (1962). Accord United States v. Shapiro, 383 F.2d 680, 683 (7th Cir.1967); Pagliaro v. Cox, 143 F.2d 900, 901 (8th Cir.1944); Alex v. State, 484 P.2d 677, 683-84 (Alaska 1971).

VI
The court did not err in admitting a "mug shot"-type photograph of the defendant with prison numbers across his chest. Ordinarily "mug shots" are inadmissible because they depict an accused in a manner which allows a jury to infer that the accused has a prior criminal record, Holsclaw v. State, 364 So.2d 378 (Ala.Cr.App.), cert. denied, Ex parte State ex rel. Attorney General, 364 So.2d 382 (Ala. 1978). Yet, in an escape prosecution, the jury is already well aware of the fact that the accused was a prisoner with at least one prior conviction at the time of the alleged offense. Thus, the defendant was not prejudiced by the introduction of the "mug shot."
A photograph may be admitted, against the contention that it is cumulative or demonstrative of undisputed facts, if it illustrates other testimony in the case. Arthur v. State, 472 So.2d 650, 660 (Ala.Cr. App.1984), reversed on other grounds, Ex parte Arthur, 472 So.2d 665 (Ala.1985). Here, the defendant's photograph shed light upon the testimony given by the records custodian of the Department of Corrections, who identified the defendant.

VII
A criminal defendant who takes the stand may be impeached by showing that he has been convicted of a crime involving moral turpitude. Ala. Code (1975), § 12-21-162; Edmonds v. State, 380 So.2d 396 (Ala.Cr.App.1980). The fact that this defendant was impeached by showing that he had three prior convictions, rather than only the two upon which the state relied in proving its prima facie case in chief, is not a ground for reversal. Compare Smith v. State, 393 So.2d 529, 532-33 (Ala.Cr.App. 1981) (introduction of two prior convictions, when only one was necessary to prove object offense, not improper). "[T]he number of times a witness has been convicted is within the scope of legitimate inquiry for purposes of establishing his credibility." Smith v. State, 45 Ala.App. 167, 168, 227 So.2d 586 (Ala.Cr.App.1969).

VIII
The defendant claims the court erred in denying his challenge for cause to a prospective juror who was, according to defense counsel, a corrections officer at the facility where defendant was incarcerated. The transcript does not contain the jury selection phase of the trial and there is no challenge for cause in the record. The objection made the basis of this issue was interposed after presentation of all the evidence and before the oral charge to the jury. The defendant's allegations of error are not supported by the record and we have nothing before us to review. Gwin v. State, 425 So.2d 500, 504 (Ala.Cr.App. *349 1982), cert. quashed, Ex parte Gwin, 425 So.2d 510 (Ala. 1983); Howard v. State, 417 So.2d 599, 601 (Ala.Cr.App. 1982).

IX
After closing arguments and the court's oral charge to the jury, defense counsel moved for a mistrial based on comments by the prosecutor in closing argument. From the record:
"[Defense Counsel]: [T]he State first stated that sympathy was for the Court, for the Judge in this case, when in fact there's no discretion in this case because if the defendant is found guilty, there's a mandatory sentence. And then the State continued in its closing argument to say that if the jury found the defendant not guilty, he would go free, which is not the case at all because if they find him not guilty, he will remain in prison. And each of those two statements separately and in combination, I feel they prejudiced the jury and they misled the jury, and we ask for a mistrial on this basis.
"THE COURT: What says the State?
"MR. TALIAFERRO [Assistant District Attorney]: Your Honor, as to the statement that the prosecution has argued that this man would be set free, I honestly don't recall making that statement, certainly in those exact words. I was trying to make a point with the jury, of course, and the particular part of my argument that if this man were set free on these chargesin other words, not convicted of these chargesthen anyone could escape with this type of circumstance with impunity. And, again, as to the sympathy, the defense was primarily, according to the prosecution and the State, of a sympathetic nature and warranted that type of argument, as well as the fact that his sentence is a life sentence and can be given either concurrently or consecutively and does provide some discretion on the part of Your Honor.
"THE COURT: Well, first let me say that this motion was made some time after this took place, and it's most difficult for the Court to try to take action on a motion coming so late. I don't in any event think that the motion would be well taken at any rate, and I'm going to deny the motion for a mistrial in this case."
The transcript does not contain the closing arguments of counsel. Although the court reporter is not required to take stenographic notes of the argument of counsel, the reporter is required to note objections of counsel, their reference to arguments, and the ruling of the court on such objections. Ala. Code (1975), § 12-17-275. See Lyons v. State, 53 Ala. App. 111, 298 So.2d 42 (1974). Because neither an objection nor a ruling on the comments is included in the record, we must assume that defense counsel did not object to the state's argument at the time it was made. "It is well-settled that an objection to a portion of [the] solicitor's closing argument made after the conclusion of the trial and after the judge's charge to the jury, but prior to the jury retiring for their deliberation, comes too late." Baldwin v. State, 380 So.2d 388, 392 (Ala.Cr.App. 1980). Furthermore, because the record before us is insufficient to determine with reasonable clarity what the prosecutor said in closing argument, the context in which it was said, and the point he was trying to make, we are unable to conclude that a mistrial was warranted. See Hurst v. State, 469 So.2d 720, 724 (Ala.Cr.App. 1985); Hadley v. State, 448 So.2d 465, 468 (Ala.Cr.App. 1984).

X
At some point during the jury's deliberations, the court was notified that the jury had a question and the following exchange ocurred:
"THE COURT: I've got your question, ladies and gentlemen, and I can re-read to you the offense of escape in the first degree. A person commits the crime of the offense of escape in the first degree if after having been convicted of a felony, he escapes from custody imposed because of that conviction. A person is in custody when he is restrained or detained *350 by a public servant because of a conviction. That's what custody is.
"Does that answer your question? Or another question? I suspect you have got another question.
"A JUROR: Define restraint.
"THE COURT: Not free to go.
"A JUROR: Not free to go?
"THE COURT: Not free to go. You are restrained when you are not free to go.
"A JUROR: Restrained by a public servant?
"THE COURT: Yes, ma'am.
"A JUROR: It's the same thing?
"THE COURT: Yes, ma'am.
"A JUROR: Physically?
"THE COURT: No.
(Whereupon, the jury returned to the deliberation room to continue their deliberations, and the following occurred out of their presence as follows:)
"THE COURT: Any objection?
"MR. SABEL: Yes, I object to the instruction on the grounds that it shifts the burden of proof to the defendant in that there is no mention in the statute about physical restraint. And I think that what it has done is remove the burden of the State to prove beyond a reasonable doubt that the defendant was in custody under the statute as written.
"THE COURT: Well, the statute has been construed by the Court of Civil [sic] Appeals in the case of Alexander versus State. That ruling, according to the Supreme Court of Alabama, cannot apply retroactively. It can apply prospectively in that the statute has been construed by the Court at the time this alleged offense was committed in this case. And the question resolved by Alexander is whether a State work release program is custody. Alexander replied in the affirmative that it is. It does not shift the burden of proof at all. What the State has to prove to prove its case is the fact that there was a conviction, that the defendant was remanded to the custody of the Department of Corrections, and that thereafter if he was put on a work release program, that's the case.
"MR. SABEL: Your Honor, I would like to make a further objection, also, in the manner in which the Court questioned the jury in that there could be a number of jurors with other questions that are too shy and is hesitant to ask them, and then a juror that is leaning toward conviction may be the one that asked that particular question and there may be others that have other questions. And I think it throws the door open to too much of an influence by people that have the personality to assert themselves in court, and I don't think that that should be authorized.
"THE COURT: Well, I'm not too sure I understand your objection, to be perfectly honest with you, Mr. Sabel. If there are people on the jury that have questions about the law that the court has instructed them onand the court did encourage them to ask those questions, if they did have a questionthen I must only assume that only those that had questions were the people that had them [sic].
"MR. SABEL: Your Honor, I guess my main point in that regard is that the other questions came from the jury room, whereas these questions came from the particular individuals.
"THE COURT: Well, it's apparent to me, and it should have been apparent to everybody, that the jury was having trouble with the legal definition of the word custody in this case.
"The jurors were given the opportunity to ask questions, and I presume that there may be more or there might not be more."
The defendant's first objection, based on the court's definitions of the terms "custody" and "restraint," was correctly overruled. The court's answers to the jury's questions were proper statements of the law as set out in Alexander v. State, supra.
The defendant's second objection, that the court should not have answered any questions from individual jurors because there may have been other jurors who were too "shy" or "hesitant" to ask questions, misconstrues the functions of *351 both the trial and the appellate courts. A trial judge is not required to speculate as to questions which the jury did not ask or the reason why some jurors asked questions and others did not. A judge may answer any proper question from an individual juror in open court in the presence of all parties and counsel. See Johnson v. State, 100 Ala. 55, 14 So. 627, 629 (1894). "This court has opined on many occasions that the jury is entitled at all times to have access to the trial court for such additional instructions as they may require." Thomas v. State, 455 So.2d 278, 281 (Ala.Cr.App. 1984).
This court reviews only the rulings of the trial court in the context of the record. In the absence of any evidence of juror coercion or intimidation, we uphold the propriety of the answers given without speculating upon the existence of other questions unspoken.

XI
The defendant claims that his life sentence, imposed pursuant to § 13A-5-9(c)(2), Code of Alabama (1975), was improper for the following reasons: (1) the State did not properly prove that he had been convicted of three prior felonies, (2) the sentence constitutes cruel and unusual punishment in violation of the proportionality principles announced in Solem v. Helm, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), and (3) the felony conviction which was an element of the State's proof of the crime of escape could not again be used for enhancement purposes under the habitual offender sentencing provisions of § 13A-5-9(c)(2).
Although the proportionality analysis of Solem v. Helm, supra, is inapplicable to sentences other than life without parole, see Maddox v. State, 502 So.2d 790 (Ala.Cr. App.1986) (on remand), cert. denied, Ex parte Maddox, 502 So.2d 794 (Ala.1987), and is not mandated here, we agree with the defendant that he is entitled to a new sentencing hearing.
The prior felony conviction which the State was required to prove in order to convict the defendant of first degree escape under § 13A-10-31, Code of Alabama 1975, cannot again be used for enhancement purposes to increase the defendant's punishment under § 13A-5-9(c)(2). Ringer v. State, 501 So.2d 493 (Ala.Cr.App. 1986).
At trial, the State proved that the defendant had been previously convicted in Montgomery County, Alabama, of theft in the first degree and sale of drugs, and that he had been sentenced to two 10-year concurrent terms for those offenses. Pursuant to the holding of Ringer v. State, supra, the state may use only one of the Montgomery County, Alabama, convictions for sentencing enhancement purposes.
The third prior felony upon which the State relied at the sentencing hearing was a 1975 burglary conviction from Sumter County, Georgia. The defendant contends that the Georgia conviction was inadmissible because (1) it was not shown to have been based on conduct which, had it occurred in Alabama, would have constituted a felony under current Alabama law, (2) it was not shown that the defendant was represented by counsel, and (3) it was not properly authenticated.
The records pertaining to the Georgia offense consisted of an accusation with a notation that the defendant pleaded guilty on January 30, 1975, and an "Order of Probation" signed by the presiding judge. There was no judgment entry, no attestation, and no certificate as required by § 12-21-70, Code of Alabama 1975. Consequently, the Georgia offense should not have been considered in sentencing the defendant as a habitual offender. See McBride v. State, 480 So.2d 619, 620 (Ala. Cr.App.1985); Phillips v. State, 462 So.2d 981, 986 (Ala.Cr.App.1984).
On cross-examination during his escape trial, the defendant admitted that he had been convicted "on January the 30th, 1975, in Sumter County for Burglary." Following defense counsel's objection to the State's questioning the defendant about the prior conviction, the trial court ruled:
"THE COURT: This jury is entitled to know when it weighs his credibility.

*352 And if it is offered for that purpose, that's what it will be received for.
"MR. TALIAFERRO [Assistant District Attorney]: That's what I offer it for, Your Honor."
The defendant maintains that his answer on cross-examination did not establish the Georgia conviction for purposes of sentencing enhancement because the evidence was allowed for impeachment purposes only. We agree.
It is undisputed that a defendant in a criminal case may be cross-examined regarding his prior convictions for crimes involving moral turpitude in order to attack his credibility. Johnson v. State, 292 Ala. 208, 291 So.2d 336 (1974); McGovern v. State, 44 Ala.App. 197, 205 So.2d 247 (1967). Section 12-21-162, Code of Alabama 1975, provides, in pertinent part, the following:

"As affecting his credibility, a witness may be examined touching his conviction for a crime involving moral turpitude...." (Emphasis added.)
The fact that the defendant's testimony may be received in evidence at the guilt phase of his trial to affect his credibility as a witness does not, however, render his testimony a judicial admission for the purpose of dispensing with proof of an essential element of the State's case at the sentencing phase of his trial. Wigmore defines a judicial admission as
"an express waiver made in court or preparatory to trial by the party or his attorney conceding for the purposes of the trial the truth of some alleged fact.... This is what is commonly termed a solemni.e., ceremonial or formalor judicial admission or stipulation. It is, in truth, a substitute for evidence, in that it does away with the need for evidence.
"This judicial admission is sharply marked off from the ordinary or quasi-admission which indeed does not deserve to bear the same name. The latter is merely an item of evidence, available against the party on the same theory on which a self-contradiction is available against a witness.... The [quasi-admission] is not conclusive; but the [judicial admission] is conclusive." 9 Wigmore, Evidence § 2588 at 821-22 (Chadbourn rev. 1981).
"It is of the nature of an admission, plainly, that it be by intention an act of waiver relating to the opponent's proof of the fact and not merely a statement of assertion or concession made for some independent purpose." 9 Wigmore, § 2594 at 833 (emphasis added).
Alabama courts have followed and applied the Wigmore definition of judicial admissions in at least two recent cases, see, e.g., Donahay v. State, 287 Ala. 716, 718-19, 255 So.2d 599, cert. denied, 255 So.2d 602 (Ala.1971); Johnson v. State, 508 So.2d 1192 (Ala.Cr.App.1986). In Donahay, the court held the defendant bound by his counsel's formal statement, "I admit that [the defendant was convicted of robbery]. I admit that for the record." In Johnson, however, the court found defense counsel's closing argument, "I am not asking you to find the defendant not guilty.... I am asking you to find him not guilty by reason of insanity" not to be a judicial admission abandoning his client's not guilty plea:
"We hold that the record before us does not disclose unequivocal conduct of counsel which evidences a distinct and formal admission made for the express purpose of dispensing with the formal determination of guilt by the jury at appellant's trial. The issue of guilt should have been submitted to the jury for their consideration, along with appellant's insanity defense." Johnson v. State, supra, 508 So.2d at 1196.
In view of the fact that the defendant here had no pre-trial notice of the State's intent to proceed against him as a habitual offender and, specifically, no notice of its intent to use the Georgia conviction to enhance his sentence, his concession made on cross-examination for impeachment purposesthat he had been previously convicted, simply does not rise to the level of an intentional waiver of proof made for the express purpose of dispensing with the need for the State to present evidence at a later sentencing hearing. "It is not an *353 acceptable answer that the defendant was put on notice that the State was proceeding against him under the recidivist statute when the State, for impeachment purposes, introduced evidence of a prior felony allegedly committed by him." Ex parte Glover, 508 So.2d 218 (Ala.1987).
Although pre-trial notice of the State's intent to proceed under the habitual offender act is neither required by the constitution, see Oyler v. Boles, 368 U.S. 448, 452, 82 S.Ct. 501, 504, 7 L.Ed.2d 446 (1962), nor mandated by our statute and procedural rules, see Holley v. State, 397 So.2d 211, 213 (Ala.Cr.App.), cert. denied, Ex parte Holley, 397 So.2d 217 (Ala.1981), the lack of notice is one factor indicating that a defendant's testimony conceding his prior conviction, on cross-examination, does not constitute a solemn judicial admission or formal waiver of the State's proof at sentencing. See State v. Shepard, 247 Iowa 258, 73 N.W.2d 69 (1955), overruled on other grounds, State v. Jensen, 189 N.W.2d 919, 923 (Iowa 1971) (where prior convictions were alleged in the indictment, defendant's admission on cross-examination relieved the State of the burden of proving them); Laday v. State, 685 S.W.2d 651 (Tex.Cr.App.1985) (same). See also People v. Niles, 227 Cal.App.2d 749, 39 Cal.Rptr. 11 (1964) (same) (cited by the Alabama Supreme Court in Donahay v. State). Compare, e.g., In re Yurko, 10 Cal.3d 857, 112 Cal.Rptr. 513, 519 P.2d 561 (1974) (because a defendant's admission of prior convictions is the "functional equivalent" of a guilty plea to a separate charge, the court must advise him, in a Boykin-type colloquy, of the rights he waives by admitting prior convictions); State v. Robertson, 128 Ariz. 145, 624 P.2d 342 (1980) (procedural rule requires that accused be admonished of consequences of admitting prior convictions); State v. Martin, 427 So.2d 1182 (La.1983) (statute requires that accused be "cautioned" before court accepts admission of prior convictions); State v. Ziemba, 216 Neb. 612, 620, 346 N.W.2d 208, 214 (1984) (before accepting a "waiver" of the State's proof of prior conviction by the accused, court must address accused and ascertain whether he was represented by counsel at time of prior conviction); People v. Morrison, 100 A.D.2d 976, 475 N.Y.S.2d 115 (1984) (procedural rule invalidates accused's admission of prior convictions in the absence of notice and an opportunity to controvert).
A defendant cannot waive a right of which he is unaware and which comes into play at a proceeding of which he has not been informed. "A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege." Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938) (emphasis added). An accused who has not been convicted yet, much less notified that upon conviction he will be treated as a habitual offender, cannot, by conceding a prior conviction on cross-examination during the trial of his guilt, intentionally relinquish his right to insist that the State prove his former conviction at sentencing. Construing his concession on cross-examination as a formal waiver or judicial admission is tantamount to requiring that the defendant predict his own conviction, calculate his sentencing as a recidivist, and foresee the futility of disputing the State's proof at sentencing. "No citation of authority is required to support the proposition that the law imposes no duty upon trial counsel, ... [or the defendant] to anticipate an unsuccessful defense of his client." Ex parte Glover, 508 So.2d at 219. The law also imposes no duty upon the accused to know which prior convictions the State will use to enhance his punishment if he is convicted. See A.R.Cr.P. Temp. 6(b)(3)(ii) ("At a reasonable time prior to the hearing the defendant shall be given notice of the prior conviction or convictions upon which the State intends to proceed"). More importantly, due process requires "reasonable notice and an opportunity to be heard relative to the recidivist charge," Oyler v. Boles, 368 U.S. at 452, 82 S.Ct. at 504. In a case, such as the one before us, in which the State relies on an at-trial admission of a prior conviction, post-trial notice of the habitual offender charge is obviously unreasonable, because it comes after the accused has already relinquished his "opportunity *354 to be heard." "[T]he use of such convictions as evidence for purposes of impeachment which goes only to credibility, is not nearly so serious as the use of a conviction for enhancement, which may add years of imprisonment to the sentence of a defendant." Loper v. Beto, 405 U.S. 473, 479, 92 S.Ct. 1014, 1017, 31 L.Ed.2d 374 (1972) (quoting Loper v. Beto, 440 F.2d 934, 937 (5th Cir.1971)).
While there is no flaw in the Rule 6(b)(3)(ii) notice requirement itself, the fact that Alabama law requires no pre-trial notice to a defendant that he is subject to the recidivist provisions militates against treating the defendant's testimony on cross-examination at the guilt trial as a judicial admission. The holding of Fisher v. State, 453 So.2d 2, 3 (Ala.Cr.App.1984), and Wilson v. State, 428 So.2d 197, 201 (Ala.Cr. App.1983) that "[w]here the accused admits the prior convictions at trial, there is no legal requirement for notice," is fundamentally flawed because it answers the wrong question: Is post-trial notice required when the defendant has already admitted his prior convictions at trial? The proper question should be: Has the defendant admitted (i.e. waived, for sentencing purposes, proof of) his prior convictions when, without having received notice that they would be at issue, he concedes their existence on cross-examination at trial? We answer the latter question in the negative.
There is a further reason why the defendant's testimony on cross-examination does not qualify as a judicial admission. Judicial admissions are competent against the defendant "on the trial of any issue in a criminal case to which they are pertinent.... They are conclusive on the person making them at least for the purposes of the case in which they are made." 22A C.J.S., Criminal Law § 733 at 1061-62 (1961) (emphasis added). "To be admissible against him the admissions and declarations of accused must have some legitimate bearing on the issues to be tried. They may be received to prove any material matter in issue to which they are relevant." 22A C.J.S., Criminal Law § 738 (1961). The prior convictions of a habitual offender are relevant, at the guilt trial of the substantive offense, only to the defendant's credibility as a witness. They are immaterial to any issue of guilt and they do not constitute an element of the State's proof. See Annot., 153 A.L.R. 1159, 1162-63 (1944):
"Where the fact of previous conviction subjecting the defendant to enhanced punishment is not an issue for determination upon the trial of the criminal charge, as, for example, where, under the statute, the proceedings for determination of the fact of a previous conviction must be kept separate from those determining the matter of guilt of the present offense,... cross-examination of the accused concerning previous convictions, for the purpose of showing such convictions and thereby subjecting him to enhanced punishment, would be ... irrelevant."
Compare Donahay v. State, supra (in prosecution for possession of a pistol after conviction of a crime of violence, proof of defendant's prior conviction was essential to a prima facie case); Hodges v. State, 45 Ala.App. 29, 221 So.2d 922, cert. denied, 284 Ala. 731, 221 So.2d 923 (1969) (same). Accord State v. Shepard, supra (where prior convictions were averred in the indictment and became part of the State's burden of proof, defendant's admission on cross-examination established a material element of the State's case); Reed v. State, 580 P.2d 159 (Okla.Cr.App.1978) (same); Laday v. State, 685 S.W.2d 651 (Tex.Cr. App.1985) (same).
The defendant here did not raise his Fifth Amendment right against self-incrimination as a further basis for not giving conclusive effect to his concession on cross-examination, and we do not decide the issue on Fifth Amendment grounds. We note, however, that the rules governing waiver of a defendant's Fifth Amendment rights by taking the stand are analogous to the principles underlying the determination of whether a defendant's testimony constitutes a judicial admission. Just as declarations by the accused are deemed conclusive proof against him to the extent that they constitute express waivers of the State's *355 proof on relevant issues, the accused's taking the stand is a waiver of his Fifth Amendment right against self-incrimination "as to all facts whatever (except those which merely impeach his credit and therefore are not directly related to the charge in issue"). 8 Wigmore, Evidence § 2276(2) at 461 (McNaughton rev. 1961). "His voluntary offer of testimony upon any fact is a waiver as to all other relevant facts because of the necessary connection between all." 8 Wigmore, § 2276(2) at 459 (emphasis in original). See State v. Grady, 153 Conn. 26, 211 A.2d 674 (1965); Smith v. Commonwealth, 182 Va. 585, 30 S.E.2d 26 (1944). Compare Fed.R.Evid. 608(b) ("The giving of testimony, whether by an accused or by any other witness, does not operate as a waiver of his privilege against self-incrimination when examined with respect to matters which relate only to credibility"). Some courts, while allowing the impeachment use of a defendant's statement that he has been convicted of a prior offense, prohibit altogether the later substantive use of that testimony to prove an element of habitual criminality. See, e.g., People v. Chavez, 621 P.2d 1362 (Colo.), cert. denied, 451 U.S. 1028, 101 S.Ct. 3019, 69 L.Ed.2d 398 (1981) (leading case); State v. Archunde, 91 N.M. 682, 579 P.2d 808 (Ct.App.1978); Montez v. State, 670 P.2d 694 (Wyo.1983). But see Brown v. Commonwealth, 551 S.W.2d 557 (Ky.1977) (defendant's testimony admitting prior conviction on cross-examination at guilt trial not shielded by Fifth Amendment from use at sentencing).
We need not reach the self-incrimination issue in order to hold that the defendant's statement on cross-examination at trial that he had been convicted "on January the 30th, 1975, in Sumter County for Burglary" did not constitute conclusive proof of the prior conviction for purposes of sentencing. The statement was not a formal judicial admission because (1) it could not be considered an intentional waiver of proof made for the express purpose of dispensing with the need for the State to present any evidence at the sentencing hearing, and (2) it was made during the guilt trial, where it was relevant only to the defendant's credibility as a witness and was not material to any element of the State's case.
The defendant's concession on cross-examination, however, does constitute what Wigmore describes as a "quasi-admission," 4 Wigmore, Evidence §§ 1058-59 (Chadbourn rev. 1972), and it was admissible to contradict any denial of the prior conviction which the defendant may have set up at the sentencing hearing:
"§ 1058. Quasi admissions, as distinguished from solemn or judicial admissions. The law of evidence has suffered, in its most vital parts, from an ailment almost incurablethat of confusion of nomenclature. The term `admissions' exhibits this misfortune in one of its notable aspects. There are two principles not at all connected, which for a century or more have had to be discussed by the aid of a single and common term. One of these principles is the subject of the present chapter; it authorizes the receipt of any statement made by an opponent, as evidence in contradiction and impeachment of his present claim. Such statements, here referred to in the loose and usual phraseology as `admissions,' should better, with a view to discrimination and clearness, be designed quasi admissions.
"The true admission, in the fullest sense of the term, is another thing, and involves a totally distinct principle. It concerns a method of escaping from the necessity of offering any evidence at all. The former is an item in the mass of evidence; the latter is a waiver relieving the opposing party from the need of any evidence.

"....
"Throughout the present discussion the term `admissions' will be understood to signify the ordinary or quasi admission; the term `judicial admission' will be used to signify the formal waiver of proof.
"§ 1059. Quasi admissions, as distinguished from solemn or judicial admissions (continued): Quasi admissions not conclusive: Explanations; corroboration by prior consistent *356 claims; putting in the whole of the statement. (1) A quasi admission, of the present sort, being nothing but an item of evidence, is therefore not in any sense final or conclusive. The opponent, whose utterance it is, may none the less proceed with his proof in denial of its correctness; it is merely an inconsistency which discredits, in a greater or less degree, his present claim and his other evidence."
4 Wigmore, Evidence §§ 1058-59 at 26-27 (Chadbourn rev. 1972) (emphasis in original). Thus, although the defendant's concession on cross-examination at trial that he had a prior conviction was not conclusive proof of the prior conviction for habitual offender sentencing purposes, it was usable by the State to impeach the defendant, should he have chosen to testify at sentencing, or to corroborate other documentary evidence of conviction. See James v. State ex rel. Comm'r of Motor Vehicles, 475 N.E.2d 1164 (Ind.App.1985) (defendant's admission of prior convictions, on cross-examination, corroborated the contents of disputed documentary exhibits and rendered their admission harmless). By the same token, the defendantnot being concluded by his "quasi-admission" of a prior conviction on cross-examination at trialis entitled to claim that, notwithstanding the historical fact of a judgment entry against him, his conviction is unavailable for enhancement purposes under the recidivist statute because, for example, he had no attorney at the time of the prior offense, or the conduct forming the basis for a foreign conviction does not constitute a felony in Alabama, etc.
"(2) It follows that an opponent whose admissions have been offered against him may offer any evidence which serves as an explanation for his former assertion of what he now denies to be the fact. This may involve the showing of a mistake, or the evidencing of circumstances which suggest a different significance to the words. The modes of explaining away a witness' self-contradictions (§ 1044 supra), and of corroborating him by consistent statements (§ 1129 infra), suggest analogies here."
4 Wigmore, § 1059, at 30-31.
In the present case, the defendant's testimony that he had been convicted "on January the 30th, 1975, in Sumter County for Burglary" corroborated, to some extent, the incomplete documentary evidence of his Georgia conviction. The State was required to prove, however, that the defendant was represented by an attorney at the time of the Georgia conviction and that the conduct forming the basis for the Georgia conviction would have constituted a felony under current Alabama law if the offense had occurred here. See Ex parte Thompson, 525 So.2d 820 (Ala.1985); Cushing v. State, 455 So.2d 119, 121-22 (Ala.Cr.App. 1984); Rule 6(b)(3)(iv), A.R.Cr.P.Temp.
The defendant's conviction is affirmed. The cause is remanded for a new sentencing hearing.
AFFIRMED;
REMANDED FOR NEW SENTENCING HEARING.
All Judges concur.

ON RETURN TO REMAND
BOWEN, Judge.
On remand, the Habitual Felony Offender Act was not invoked and the defendant was sentenced to 12 years' imprisonment. This action is consistent with this Court's order of remand. The judgment of the circuit court is affirmed.
OPINION EXTENDED;
AFFIRMED.
All Judges concur.